[No. 7,146.—In Bank.]
May 26, 1882.

PEOPLE EX REL. SABIN HARRIS v. FRANCIS BLAKE
ET AL.

DEDICATION OF STREET—ABATEMENT OF NUISANCE—INJUNCTION—ACTION BY THE STATE.—In an action by the people of the State to have certain premises in the City of Oakland adjudged to be a public street and for the abatement of obstructions therein, and for an injunction the Court, (upon the evidence stated in the opinion), found that the land in question was the property of the defendants, and had never been dedicated by them or their predecessors in title as a street, and judgment was entered for them accordingly. (McKEE, J., and Ross, J., dissenting.)
Held: The evidence shows a dedication by defendant's grantors; and the Court erred in finding to the contrary. The elements entering into and constituting a dedication, viz., an intention by the owner, clearly indicated by his words or acts to dedicate the land to public use, and an accept-ance by the public of the dedication, established by the use by the pub-lic of the land for the purpose to which it had been dedicated, are clearly manifested.
ID.—EVIDENCE.—On the trial the relator offered to prove certain declarations by predecessors in title of the defendant (before any conveyance by them) to the effect that the premises in controversy were a public street, but the evidence was excluded by the Court. Held: The evidence was admissible.

APPEAL from a judgment for defendant, and from an order denying a new trial, in the Third District Court of the County of Alameda. McKEE, J.

*George E. Whitney,* for Appellant.

At least two of the deeds in the defendants' chain of title, introduced by them in evidence, refer to the street in question. And Clark, the lawyer who drew the deed, would testify that the boundary by the street was put into the description for the purpose of showing a dedication of the street; and that Van Auken, the grantee, took the deed with full notice that the street was held to be a dedicated street by his grantors. The judgment of the Court practically finds that there was no Fourteenth street where defendants' deed refers to it as a descriptive monument. We insisted that by the acceptance of this deed by Van Auken, he and his successors in interest, including the defendants, were estopped to deny the existence of Fourteenth street at this point. (*Hunter*

v. *Sandy Hill*, 6 Hill, 411; Angell on Highways, § 154;
*Brown* v. *Manning*, 6 Ohio, 303; S. C., 27 Am. Dec. 255;
*Morgan* v. *Railroad Co.*, 96 U. S. 716; *Oswald* v. *Grenet*, 22
Texas, 94.)

" The intent to dedicate will be presumed against the owner
when it appears that the easement in the street or property
has been used and enjoyed by the public for a period corre-
sponding with the statutory limitation of real actions."
(Dillon on Mun. Corp., § 500, and cases cited; 2 Greenl. Ev.,
tit. Prescription, §§ 537 *et seq.; Commonwealth* v. *Cole*, 26 Pa.
St. 187; *Thayer* v. *Boston*, 19 Pick. 514; S. C., 31 Am. Dec.
157; *Hoadley* v. *San Francisco*, 50 Cal. 265; *People* v. *Pope*,
53 Id. 451; Pol. C., § 2619.)

*C. A. & C. Tuttle* and *S. F. Gilcrist*, for Respondents.

A dedication to the public use of land must rest on the in-
tention or clear assent of the owner. (*Irwin* v. *Dixon*, 9
How. 10; S. C., 18 Curtis, 6; *Hunter* v. *Trustees of Sandy
Hill*, 6 Hill, 407.)

In *The State* v. *Nudd*, 3 Foster, 327, it was held that, al-
though unenclosed land for more than twenty years had been
traveled, but it did not appear that it was ever laid out as a
highway, or fenced, or repaired as such, that there was no
dedication.  It is also said that less presumption of a dedica-
tion arises where the land is unenclosed, and the prohibition
of a passage over it might be considered as churlish.  In
*Shelby* v. *The State*, 10 Humph. 165, it was held that where
the public ceased to use a road and the owner of the soil re-
sumed the use of it, and the public acquiesced for a term of
three years, an abandonment was presumed.  In this case it
is twenty-two years since what is claimed as a street was
fenced up, and there is no evidence that the owner ever, by
any act, dedicated it.

To constitute a dedication, " there must be such user by the
public, and such an acquiescence in the use by the owner of
the soil, as to establish an *animus dedicandi*." (Wood on
Nuisances, §§ 241, 242, 248; *Pool* v. *Haskensen*, 11 M. & W.
830; *San Francisco* v. *Canavan*, 42 Cal. 541; Wash. on
Easements, 182; *San Francisco* v. *Scott*, 4 Cal. 114.)  A ded-

ication must be accepted. (*State* v. *Trask*, 6 Vt. 355; S. C., 27 Am. Dec. 534; *Noyes* v. *Ward*, 19 Conn. 250.)

MYRICK, J.:

This is an action to obtain a decree adjudging certain premises in the City of Oakland to be a public street; that the defendants be directed to remove certain buildings and obstructions therefrom, and that the defendants be enjoined and prohibited from erecting any buildings or obstructions thereon.

The Encinal of San Antonio, which embraces a portion of the present City of Oakland, and all of the premises in controversy, was, on the fifteenth day of August, 1853, owned by Jos. K. Irving and others as tenants in common. Previous to that date said owners had caused said lands to be surveyed for the purpose of partition, adopting a survey of the town of Oakland previously made by one Kellersberger under the employment of persons not holding the title, and dividing the remainder not included in said town survey into four tracts designated by the letters A, B, C and D. Tract D, as thus surveyed, adjoined the town of Oakland on the north; it contained two hundred and twenty-five acres, and included the premises in controversy. On said fifteenth day of August, 1853, by deed of partition, tract D was allotted to said Irving, and also block 191 and other blocks, as per the survey of the town of Oakland, which block 191 bounds the premises in controversy on the south. The plots of these surveys were recorded. Irving received tract D in trust for himself and others who were joint owners with him therein. A diagram of the tract was made for the purpose of distribution among themselves, and on the fourteenth of May, 1854, said Irving, by deeds, conveyed to his co-owners their respective shares in severalty. To one of the deeds was attached a copy of the diagram, and the other deeds referred to it, the conveyances being of lots according to the diagram, Lot No. 9 and a part of Lot No. 1 were conveyed to James M. Goggin, from whom the defendants deraign title to the premises in controversy.

The description in this deed contains the following: " Commencing at a point on the easterly line of Broadway, where Broadway crosses the north line of the town of Oakland, and running thence along the north line of the town," etc.,

thence north, west and south, to the place of beginning, embracing a tract bounded on the south by the town of Oakland. In August, 1853, said Irving had for value conveyed to Jones and others block 191, of which block at least six lots fronted on tract D., and had no other approach than across or upon the tract. On the fifteenth of May, 1854, said Irving, for value, conveyed to Lander and Tiffany parcels of land in said tract D, described as follows: "Commencing at a point on the northern line of Fourteenth street of said city, 11.85 chains southeastwardly from the corner of Broadway and Fourteenth street; thence southeastwardly along said line of Fourteenth street 7.65 chains," etc.; also "commencing at a point on the northern line of said Fourteenth street 20 chains northwestwardly from the corner of Broadway and Fourteenth streets, thence along the northern line of Fourteenth street ten chains," etc. This deed was recorded at least thirty days prior to the recording of the deed to Goggin. Various witnesses acquainted with the premises at different periods show from 1852 to 1859, there was an open traveled way, known as Fourteenth street, extending along north of the north line of the original plat of the town of Oakland, and over the premises in controversy, used by the public as a thoroughfare; that in the years 1856, 1857, 1858, there were fences on the north and south sides of Fourteenth street; and that the street was closed up in 1858 or 1859, by one Van Auken, a party in defendants' chain of title. The title of defendants is as follows: Deed, as above stated, Jos. K. Irving to Goggin; Goggin to Marshall and H. P. Irving; Marshall and Irving to Van Auken, as follows: "Commencing at a point where the easterly line of Broadway crosses the southerly line of Fourteenth street, thence running along the southerly line of Fourteenth street, south 64 degrees east 300 feet, thence at right angles with Fourteenth street, north 26 degrees east 180 feet, thence north 64 degrees west and parallel with Fourteenth Street, 300 feet more or less to the easterly line of the Peralta Road; thence southerly along Peralta Road to the place of beginning;" deed from Van Auken to Carlyle containing the same description as the last; and from Carlyle to defendants by mesne conveyances.

The Court below found that the premises in controversy

had not been at any time a public street, had not been dedicated as such by defendants or any of their grantors; that defendants were the owners of the premises; and accordingly rendered judgment for them.

On the trial the relator offered to prove "that at the time of the making of the deed from Marshall and Irving to Van Auken, it was talked that there was a Fourteenth street there; that Irving and Marshall proposed to sell the one hundred feet on the north side of Fourteenth street; that Van Auken desired to have the eighty feet of Fourteenth street included in his deed; that Marshall and Irving refused, objecting that Fourteenth street was a public street; that Van Auken then broke off negotiations, but subsequently came back, and without paying anything for Fourteenth street, and upon his representation that he would not close it up, but always hold it as a street, and that he only wanted to keep other people from squatting upon it—with that distinct understanding the deed was made to the south side of Fourteenth street; that the boundary by the street was put into the description for the purpose of showing a dedication of the street; and that Van Auken took the deed with full notice that the street was held to be a dedicated street by his grantors." The evidence was objected to, the objection was sustained, and the relator excepted.

A witness testified: "I had a conversation with Van Auken subsequent to the making of the deed, when he commenced to fence the street; I told him it was well understood he was not to fence up that street; that he only took that, as he said at the time prior to the execution of the deed, for the purpose of protecting himself in case anybody should attempt to jump it; he admitted it, but claimed he had a right to protect himself by doing it. I also heard Marshall and Irving, while owners of property there, before the sale to Van Auken, declare that Fourteenth street was a street." Another witness testified: "About four years ago, while P. S. Wilcox (one of the persons in defendants' chain of title) was the owner of the property, I asked him to open the street, and told him we could sell the property in block 191, provided I gave bonds that the street would be opened. He told me to give a bond, it did not make any difference what kind of a

bond. He said 'the street shall be opened, I want it open, and am going to have it opened, and if I can bulldoze the city out of something, I am going to do it; but it shall not cost you a cent.' He did not open the street, but soon after sold the property to the defendants."

From the facts admitted, or in evidence, it appears that the property in question was used as a public street from 1852 until 1859, when it was closed up by Van Auken; that while tract D. and the other tracts were owned by Jos. K. Irving, Goggin, and others, as tenants in common, said Irving conveyed block 191, containing at least six lots fronting on what was used as a street; that on the day following the deed in partition of Irving to Goggin, Irving, for value, conveyed two parcels of tract D., bounding the same by Fourteenth street, the deed thereof being recorded prior to the deed to Goggin of the premises in controversy; that while the defendants' grantors, Marshall and Irving, were the owners of the fee, they declared that Fourteenth street was a street, it being then in use as such; that their grantee, Van Auken, while he was the owner of the fee, declared that when he purchased he knew that it was a street, and took a deed for the purpose of protecting himself from attempts to "jump" it; that Wilcox, defendants' immediate grantor, retained the buildings and enclosures upon it only for the purpose of extorting money from the city. We have, also, the description in the deed from Irving and Marshall to Van Auken, and the subsequent deeds in defendants' chain of title, bounding the premises therein described by "Fourteenth street." Then there is the offer to prove that pending the negotiations between Marshall and Irving and Van Auken, the bargain was for a tract of land north of Fourteenth street, leaving the street open, and the subsequent including of the street in the deed solely for the purpose of enabling Van Auken to protect it as such, and that Van Auken had full notice that the street was held to have been dedicated by his grantors as a street.

We think the record displays two errors:

1. We think the evidence shows a dedication by defendants' grantors, and that the Court erred in finding that it did not, and in finding that the premises do not constitute a public street. We think that the elements entering into and

constituting a dedication (*San Francisco* v. *Canavan*, 42 Cal. 554), viz., an intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use, and an acceptance by the public of the dedication, established by the use by the public of the land for the purpose to which it had been dedicated, are clearly manifested.

The deed of May 15, 1854, from Irving to Lander and Tiffany, of the two parcels of land, one east and the other west from the premises in controversy, although it bounded the tracts therein conveyed by Fourteenth street, might not of itself have affected the premises in controversy, or have tended to show that Irving intended a dedication of land for a street extending from one of said tracts to the other; neither, perhaps, would the fact that lots in block 191 had no other outlet have necessarily proved a dedication of the land adjoining as a street; but those facts, taken in connection with the continuous user by the public, the description in the deed of Marshall and Irving to Van Auken, the declarations of Marshall, Irving, Van Auken, and Wilcox respectively, while owners, were evidence of a dedication. The subsequent acts and declarations had reference to a street as referred to in the prior conveyance, and as in actual use, and recognized it as an existing fact. The acts of all the owners up to the time of fencing, in 1859, are harmonious with the theory of a dedication, and with no other.

2. The relator was entitled to the evidence offered by him relating to the transaction between Marshall and Irving and Van Auken. (Sec. 1,849, C. C. P.)

Judgment and order reversed and cause remanded for a new trial.

MORRISON, C. J., and SHARPSTEIN, J., concurred.

THORNTON, J.:

I concur in the judgment of reversal. In my opinion the facts are not sufficiently and properly found.

McKEE, J.:

I dissent. The men who entered into the adverse possession of a portion of that part of the territory of Alameda

county, known to the claimants of the Peralta Rancho as the Encinal of San Antonio, caused the land upon which they had entered to be surveyed and divided into blocks and public squares, intersected by streets, a map of which was made, and has been since known as Kellersberger's Map of the Town of Oakland.

When the owners of the Spanish title to the Encinal lands came to make partition among themselves as tenants in common of their lands, which lay within and without the territory included inside the lines of the Kellersberger map, they adopted the map as their own, referred to it as such in their deeds of partition, made it part of those deeds, and had it recorded in the Recorder's office of Alameda County, on September 2, 1853.

The streets of the town of Oakland were laid out on the map from the northern line of the town, as designated on the map, to the southern boundary line in the San Antonio creek; others, at right angles with the former, were laid out from east to west, parallel with the creek and the northern line. Those parallel streets commenced at the water front, and were designated on the map as First, Second, Third, and Fourth streets, and so on to and including Thirteenth street, which was the last of the numbered streets on the map. The last tier of blocks on the map fronted south on Thirteenth street, and abutted on the north line of the town, as designated on the map. No such street as Fourteenth street, on the northern line of the town, was laid out on the map. But it is contended that the owners of the land dedicated a strip of land eighty-five feet wide immediately outside this northern line, and that they called it Fourteenth street, and that's the question.

Dedication of land to public use is purely a question of intention. Where the intention of the owner to abandon his land to the use of the public is manifested by deliberate and unequivocal acts, and the land has been accepted by the public authorities, the dedication is complete. But the acts of both the donor and the public authorities must be unequivocal and satisfactory of the design to dedicate on the one part and to accept on the other. (*The City of San Francisco* v. *Canavan*, 42 Cal. 541.) Until acceptance the public can ac-

quire nothing, and the dedication, whether made by deed or otherwise, may be revoked by the owner of the land. (*San Francisco* v. *Calderwood*, 31 id. 585; *Harding & Loftin* v. *Jasper*, 14 id. 647.)

Now, when the original owners of the land made the Kellersberger map, or, which is equivalent to the same thing, adopted and had recorded the map made by the original squatters, they thereby dedicated to the public use all the streets and public squares to the extent as designated on the map. But as no such street as Fourteenth street is laid out on the map, the map is no evidence of an intention on their part to dedicate the land for such a street. Nor did they, as tenants in common, in making partition of their lands among each other, dedicate by deed or otherwise, the land in controversy as a street. For, in making partition, they divided their lands into four parcels or tracts, which were respectively designated on a map of partition as tracts A, B, C, D. Tracts A, B, and C were situate westward of the town of Oakland as laid out on the map of the town, and tract D lay on the north of the town. The latter tract containing two hundred and twenty-five acres, was allotted in severalty to Joseph K. King. A plat of the allotment was made which showed that the southern boundary line of the plat was the northern boundary line of the town, and the deed by which the land was conveyed to Irving describes the tract as it is laid out on the plat. The plat was annexed to the deed and both were recorded, and they contain no evidence of dedication of Fourteenth street—no such street is designated on the plat or called for by the deed.

Irving thus became the owner in severalty of the land embraced in tract D. But he held the title to it in trust for himself and others, and, in 1854, he caused that part of the tract lying east of what is designated on the plat as the Peralta road, to be subdivided into thirteen blocks of ten acres, and some fractional blocks, for the purpose of transferring to his co-owners their respective interests in the land, and made a plat of the land thus subdivided. Of these blocks he conveyed to his co-owners their respective interests in severalty by deeds, to which a copy of the plat was annexed and made a part of each deed, and as such was re-

corded. Four ten-acre blocks and a fractional block were
extended on the northern line of the town of Oakland, as
designated on the Kellersberger map; and that line consti-
tuted the southern line of the blocks. These blocks were
designated on the plat as 1, 2, 3, 4, and 5. The first (No. 1)
commenced on the east line of the Peralta road outside of the
town, and eastward of it; in regular succession, followed lots
2, 3, 4, and 5, along the north line of the town. The sub-
divisions, as designated on the plat, were not intersected by
any streets whatever, and there is no space left on the plat
for a street. All the deeds made by him of the tier of blocks
on the north line of the town, call for that line as the south-
ern boundary line of the blocks. In conveying part of block
1, and block 9, immediately north of it, to J. M. Goggin, the
land is described as follows: "Commencing at a point on the
easterly line of Broadway, where Broadway crosses the north
line of the town of Oakland, and running thence along the
north line of the town south sixty-four degrees east, six
chains eighty-nine links; and thence north twenty-six de-
grees east, ten chains; thence south sixty-four degrees east,
two chains and sixty-one links to the northeasterly corner of
said subdivision lot number 1, the same being also the point of
commencement of the land this day conveyed by the party
of the first part to Humphrey Marshall; thence north twenty-
six degrees east, along Marshall's said land, three chains and
eighty-five links to the land this day conveyed by the party
of the first part to Samuel A. Morrison; thence south sixty-
four degrees west, along Morrison's land to the center of the
said Peralta road, supposed to be thirteen chains; and thence
southerly through the center of said Peralta road, and of
Broadway as extended, to a point in the center of Broadway
on the north line of the town of Oakland; thence upon a
straight line to the point of beginning, containing twelve and
ninety-seven hundredths acres, be the same more or less."

Nearly a year before the execution and delivery of that
deed to Goggin, Joseph K. Irving had, also, conveyed to one
Jones the co-terminous block on the south, within the town of
Oakland, numbered block 191 on the Kellersberger map, the
northern line of which coincided with the northern line of
the town of Oakland and the southern line of lot 1; and the land

in controversy is situate in the southwestern corner of lot 1 as conveyed to Goggin.

While Goggin was the owner he did no act whatever manifesting an intention to dedicate the land in controversy, or any part of lot 1, to the public use. On the contrary, he afterwards conveyed the lot just as he had received it from Joseph K. Irving, and by the like description in the Irving deed.

So far, therefore, it is manifest that none of the owners of the land in controversy ever dedicated it to the use of the public: nor did they, or any of them, ever, at any time, reserve a strip of land eighty feet wide for a street on the northern line of the town of Oakland, as designated on the Kellersberger map, nor did they or any of them ever sell or convey any land bounding it on such a street. Such a reservation was not made on the Kellersberger map, nor on the plat of tract D annexed to the partition deed made to Joseph K. Irving; nor on the plat of subdivisions of tract D made by Joseph K. Irving; nor in or by any deeds of conveyance by which he transferred the several lots in tract D on the northern line of the town to Goggin, Marshall, Morrison and others.

But while Goggin was owner of lot 1 outside the town line, and Jones owner of block 191 inside the town line, their common grantor, Joseph K. Irving, conveyed to Tiffany and Lander the southeastern portion of block 2, of tract D by the following description:

"A certain lot or parcel of land bounded as follows: Commencing at a point on the northern line of Fourteenth street of said city, eleven and eighty-five one-hundredth chains southeastwardly from the corner of Broadway and Fourteenth streets; thence southeastwardly along said line of Fourteenth street seven and sixty-five one-hundredth chains; thence at right angles ten chains in a northeastwardly course; thence in a northwestwardly course parallel with said Fourteenth street seven and sixty-five one-hundredth chains; thence in a southwesterly course ten chains to the place of beginning, the same being the southeastern portion of the lot designated as No. 2 on the map hereunto annexed, containing seven and six-hundredth acres."

This description does not include the premises in contro-

versy. The map referred to in the description and annexed to the deed is an exact copy of the plat of subdivisions of tract D, on which, as already shown, there is no such street as Fourteenth street; and, in fact, there was no such street as "Fourteenth street of said city," within the limits of the town as indicated by the map. In the description of the land we have, therefore, an imaginary street, and a map of the land. Where a map is referred to and made part of a deed, it is to be regarded as a more authoritative manifestation of the understanding of the parties than a verbal description of a line or a street not shown on the map. The map is regarded as a photograph of the land intended to be conveyed, and imaginary lines or streets will be discarded as less certain and reliable than the map. (*Vance* v. *Fore*, 24 Cal. 435; *Penry* v. *Richards*, 52 id. 672; *McKeon* v. *Millard*, 47 id. 581; *Powers* v. *Jackson*, 50 id. 429.)

Taking the map as the correct description of the land conveyed, the deed does not prove an actual dedication of any portion of the land for a street; and if it did, it does not include the land in controversy. Nor does the false call in the deed for a street, which was not on any of the plats or maps in evidence in the case, and which had not been laid out by any of the previous owners of the land, indicate an intention on the part of the grantor to abandon any portion of the granted premises to the use of the public. But even if such an intention were inferrable, it could only be inferred with reference to the granted premises; and as those did not include the land in controversy, which then belonged to J. M. Goggin, nothing contained in the deed to Tiffany and Lander could impair Goggin's rights to his land nor divest him of his title to it. He was not bound by any act of Irving expressed in the deed to Tiffany and Lander. Recitals in a deed do not affect strangers to it; they are only binding upon those who are parties to the deed or privies in estate.

As owner in fee of the land Goggin conveyed it, as part of lot 1 of the subdivision of tract D, to Humphrey Marshall and H. P. Irving by a deed containing the same description as that contained in the deed from his grantor; and his grantees, Marshall and Irving, conveyed it as part of the same

lot to one Van Auken in the year 1859, by a deed in which the lot is described as follows:

"Being part of lot No. 1, said lot No. 1 being a subdivision of a tract designated on the map known as the map entitled 'Map of a part of the Oakland Encinal, designated as letter D, laid out in lots for subdivision,' which is annexed to a deed made May 10, 1854, made by Josef K. Irving to Humphrey Marshall, and more particularly described as follows: Commencing at a point where the easterly line of Broadway crosses the southerly line of Fourteenth street; thence running along the southerly line of Fourteenth street, south sixty-four degrees east, three hundred feet; thence at right angles with Fourteenth street, north twenty-six degrees east, one hundred and eighty feet; thence north sixty-four degrees west, and parallel with Fourteenth street, three hundred feet more or less to the easterly line of the Peralta road; thence southerly along Peralta road to the place of beginning."

What has been said as to the description of the premises in the deed to Tiffany and Lander is applicable to this deed. The intention of the parties to convey the land in controversy is clear. It is included in the general description, and it is not excluded by the particular description. But in the particular description there is a call for a street, which, as has been shown, none of the former owners of the land had laid out or dedicated. It is therefore a false quantity in the description, which must be rejected. (*Haley* v. *Amestoy*, 44 Cal. 132; *Piper* v. *True*, 36 id. 606; *Reed* v. *Spicer*, 27 id. 57.) Rejecting it, the title to the land in controversy passed by the deed to Van Auken; and, as owner in fee thereof, he entered into possession of the lot, of which it was a part, and inclosed it; and he and his grantees have been in the undisturbed actual possession of the same for more than twenty years.

I have shown that none of Van Auken's grantors, immediate or remote, dedicated a strip of land eighty feet wide, for a street known as Fourteenth street, to the east of Broadway street, on the north line of the town of Oakland, as designated on the town map; that the land in controversy is part of lot 1 of the subdivisions of tract D, the southern line of which coincided with the northern line of the town; that the

land passed by regular mesne conveyances from the owners of the original Spanish title to Van Auken, who took possession of it, and fenced it within the general inclosure of the premises acquired from his immediate grantors; and that the defendants and their grantors have been in the actual use and occupation of the same from the year 1859 until now as owners in fee. Under such circumstances, no presumption of dedication can arise from the user by the public of any part of the land, before it was included within the general inclosure of the owner. (*San Francisco* v. *Scott,* 4 Cal. 115.) Such user, if evidence of dedication, would be equally evidence of abandonment to the public use of the entire lot; for, until it was inclosed by Van Auken, in 1859, it was an open common, and the public traveled over it at their own free will.

Until Van Auken took actual possession of lot 1 as designated on the plat of subdivisions of tract D., and inclosed it, there is, therefore, no satisfactory proof of a dedication of it to the public use, nor of acceptance by the public authorities. As private property the land in controversy came into the possession of the defendants, and it is not claimed that they, as owners of it, or their immediate grantors, from whom they received it, have ever actually dedicated it, or did any acts, or made any declarations by which they are estopped from claiming it unburdened by any easement.

But it is contended that the Court below erred in rejecting an offer to prove, by the testimony of a witness, that when Marshall and Irving, in 1859, conveyed the land described in their deed to Van Auken, " it was talked there was a Fourteenth street there ;" that they offered to sell to Van Auken one hundred feet north of it, but he refused to purchase unless the entire premises, including the land in controversy, were conveyed to him; and, upon his saying to them that he wanted the land to protect himself against squatters, and did not intend to inclose it, they sold and conveyed to him the entire premises as described in their deed.

It is said that the rejection of this offer was erroneous, because Section 1849, C. C. P., declares that when one derives title to land from another, the declaration, act, or omission of the latter, while holding the title, in relation to the property,

is evidence against the former.   This section of the Code but formulates the common law rule of evidence, which admitted as original evidence every declaration or act accompanying an act of possession, whether in disparagement of the claimant's title, or limiting or qualifying his possession.   Under that rule, before the adoption of the Codes, evidence of the declarations or admissions of a party in possession of land, in relation to his property therein, was always admissible in evidence (*McFadden* v. *Ellmaker,* 52 Cal. 349 ; *Fischer* v. *Bergson,* 49 id. 295 ; *Draper* v. *Douglass,* 23 id. 347 ; *McFadden* v. *Wallace,* 38 id. 51; *Bollo* v. *Navarro,* 30 id. 459) ; but it was only admissible : 1. As against those claiming the land under the person making the declarations; and, 2. To show the character of his possession.   Being in possession the law presumed that he was seised in fee of the land ; but that presumption was subject to be overcome by declarations or admissions made on the land showing that he was only a tenant for years, or entered into possession under lessors, or otherwise qualifying his possession.   To that extent the rule admits . declarations as original evidence against him and those claiming under him ; but it excludes declarations or admissions to prove a disclaimer of title (*Jackson* v. *Vosburgh,* 7 John. 186); or to prove or disprove a title (*Jackson* v. *Shearman,* 6 id. 21).   Title to land can neither be made nor unmade by parol evidence (*Jackson* v. *Cary,* 16 id. 303) ; nor can such evidence be used to impair or destroy the record title (*Pitts* v. *Wilder,* 1 N. Y. 525 ; *Gibney* v. *Marchay,* 34 id. 301 ; *Dodge* v. *Freedman's Sav. & T. Co.,* 93 U. S. 383).

Now the "talk" or declarations of the grantors of Van Auken were not made upon the land, for they had never been in possession of it.   As grantees of Goggin they were holders of the legal title, unburdened by any easement on the land; and the estate which they derived from him they transmitted unimpaired to their grantee, from whom the defendants by mesne conveyances derive their title.   "Talk that there was a Fourteenth street there" was, therefore, neither in disparagement of their title, nor did it accompany or qualify a possession which they had not.   And if it was offered for the purpose of proving a dedication by them, it had no tendency to prove it, in the absence of proof of a ded-

ication by any one of their predecessors in interest. As, therefore, neither they nor any of their predecessors had been in the actual possession of the land; and neither they nor any of their predecessors in interest while holding the legal title had laid out on any map or plat of the land such a street as Fourteenth street or dedicated it to the public use, the mere "talk" or surmise of a street could not have the effect of impairing, limiting, or qualifying the title to the land which ultimately passed to the defendants, and there was no error in rejecting the offer.

Yet, if it was error, it was error without injury, for the error was cured by the testimony of the witness (*Barilari* v. *Ferrea,* 8 P. L. J. 628), who, subsequently, and without objection, testified on the subject as follows: "I heard a conversation with Van Auken after the execution of the deed, when he commenced to fence the street. I told him it was well understood he was not to fence it; that he only took it, as he had said, at the time of the execution of the deed, for the purpose of protecting himself in case anybody should attempt to jump it. He admitted it; but claimed that he had a right to protect himself by doing it. I have also heard Marshall and Irving, while owners of property there, declare, before the sale to Van Auken, that Fourteenth street was a street." And, on cross-examination, "I have no recollection of any particular time when these conversations or declarations were made, except at the time of the negotiations with Van Auken." The plaintiff, therefore, had the benefit of his offer, upon the testimony of which, in connection with the other evidence in the case, the Court below found there was no dedication; and as the record contains no satisfactory proof of a dedication and of acceptance by the public authorities, and no error prejudicial to the appellant, the judgment and order should be affirmed.

Ross, J., concurred.