[No. 12726.     Department Two. — June 30, 1890.]

# THE PEOPLE, Respondent, *v.* HIBERNIA SAVINGS AND LOAN SOCIETY, Appellant.

Dedication of Avenue — Recorded Map — Acceptance — Public User. — When it appears that the owner of land made and recorded a map, upon which he declared his written intention to make all sales and conveyances according thereto, and upon which he indicated an avenue, which he thereafter threw open to the public, by fences constructed on each side thereof, and which was continuously thereafter used by the general public as a public highway, and afterwards indicated upon official maps, approved and adopted by the supervisors, a dedication of such avenue as a public street is clearly established.

Id. — Revocation — Deed Omitting Avenue. — The mere omission of an avenue which the grantor had dedicated to public use, in giving the boundaries of a block in a deed of certain city lots situated in such block, the description of the boundaries of the block not being necessary to a description of the lots, does not constitute a revocation of the dedication.

Id. — Omission from Prior Official Map — Subsequent Act of Legislature — Rejection of Highway. — The omission of such avenue from a prior official map, which had been made and approved by the city authorities several years before the dedication of the avenue by the owner of the land, cannot be material upon the question of such dedication; nor can the subsequent legislative recognition of such official map, after the date of the dedication, be construed as a rejection or discontinuance of the avenue as a public highway.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Tobin & Tobin, Thomas F. Barry,* and *A. H. Lough-borough,* for Appellant.

*Jarboe, Harrison & Goodfellow,* for Respondent.

McFARLAND, J. — This action was brought to require defendant to remove certain obstructions from an alleged street called Olive Avenue, in the city of San Francisco, running from Larkin Street, westerly, to Polk Street, through the center of block 9 of the Western Addition, between Ellis and O'Farrell and Larkin and Polk streets, and being of the width of thirty-five feet, and to have said Olive Avenue adjudged to be a public highway. Judgment went for plaintiffs in the court below, and the defendant appeals from the judgment, and from an order denying a new trial.

Practically the only question in the case is, whether or not the findings of fact are justified by the evidence; for those findings clearly support the conclusions of law and the judgment, and the assigned errors of law occurring at the trial are unimportant.

The court finds, in brief, that in the year 1861 Jacob Beideman was the owner of the premises described in the complaint, and of the northerly half of said block 9, which was 275 feet wide from O'Farrell to Ellis streets; that in January of that year Beideman made and filed in the recorder's office a map of lands, including said block 9, upon which the premises described in the complaint were delineated as a street thirty-five feet wide, called thereon Olive Avenue; and that upon said map said Beideman indorsed and signed the following: "The county recorder of the city and county of San Francisco will please file in his office the above map or plan of the Beideman tract of land, according to which I shall hereafter make all sales and conveyances." It is further found that in said year—1861—Beideman inclosed the said northerly half of said block by fences, and as the southerly boundary thereof constructed a fence running

parallel with O'Farrell Street and at a uniform distance southerly therefrom of 120 feet, throughout the length of the block, from Larkin to Polk; that said fence was maintained in that position by Beideman and his grantees continuously thereafter until the year 1870; "and that thereby the premises in controversy herein to the width of thirty-five feet were, by said Beideman and his said grantees, thrown open to public use as a public street or highway"; and "that continuously from said year 1861, until the year 1870, the said premises, to the said width of thirty-five feet, were continuously used by the general public as a street or highway." It is further found that the premises in controversy were delineated as a street on the two official maps known as the City Engineer's Map, and the Humphrey's Map, no name to the street being given on the former map, but being designated as Olive Avenue on the Humphrey's Map. The former map was approved and adopted by the board of supervisors in January, 1866, and the latter in October, 1870. And the court finds that by the acts aforesaid the said Olive Avenue was dedicated and accepted as a public street or highway. The obstructions complained of were placed on the said street, as found by the court, in the year of 1883. These facts being taken as true, it is clear that the conclusion of the court, that Olive Avenue is a public street, and the judgment following that conclusion, is correct, under all the cases and authorities cited by counsel.

And it is clear that we would not be warranted in holding that there was not sufficient evidence to support the finding of fact. Indeed, it appears that the strip of land afterward called Olive Avenue was used as a public thoroughfare from an early period in the history of the city; that it had been fenced on both sides prior to the time when Beideman put up the fence mentioned in the findings; and that several years before 1861, Beideman, who then owned the whole of block 9, sold part of

the southerly half, and described it as 120 wide,—thus leaving room in the center for a 35-foot street; for the distance from Ellis or O'Farrell Street to the middle of the block is 137½ feet.

On May 9, 1862, Beideman conveyed to Deane and Wineschanks, through whom appellant claims title, lots 4, 5, and 6 in block 9 of the Western Addition. The deed described the block as bounded by O'Farrell, Larkin, Ellis, and Polk streets, but does not mention Olive Avenue, or any street running through the block, and appellant contends that this omission constitutes a revocation of the dedication of Olive Avenue. This mere negative act of omitting in a deed something that was not necessary to a description of city lots, which are usually described by numbers, would not, of itself, we think, amount, under any circumstances, to a grave act of revocation. But the deed was made nearly a year and a half after the filing of the Beideman map, and after there had been a public user, and, moreover, the court finds that the fence was continuously maintained by Beideman "and his grantees," and that the premises were continuously used by the general public as a street until 1870.

There was an official map of the city called the Van Ness Map, upon which Olive Avenue does not appear; and some significance is sought to be attached to this fact by appellant. But that map was made and approved by the board of supervisors in 1856, and ratified by the legislature in 1858. All this was several years before the filing of Beideman's map, and therefore before his offer to dedicate; and we cannot see how the absence of the street in dispute from the Van Ness Map is of any importance.

On April 25, 1862, the legislature passed an act (Stats. 1862, p. 391) amendatory of the Consolidation Act, in which, "for the purposes of this law," all the streets, alleys, etc., laid down on the Van Ness Map are declared to be public. The "purposes" of the act were

to provide for an extensive system of grading, paving, macadamizing, etc., at the expense of persons owning lots fronting on streets, and it is contended by appellants that, because Olive Avenue was not on the Van Ness Map, therefore this act of the legislature must be construed as a "rejection" and "discontinuance" of said avenue as a public highway. We think this position untenable. There are no express words of discontinuance in the act; and as its purpose was to provide for the improvement of certain streets, it would be a strained inference to hold that the omission to name other streets then open meant an intention to vacate them. Moreover, on the very next day (April 26, 1862; Stats., p. 407), an act was passed "to establish the lines and grades of streets in the city and county of San Francisco," under which, and an amendment thereto, approved in April, 1864 (Stats. 1863-64, p. 460), the Engineer's Map, above mentioned, was prepared. This map was adopted by the board in January, 1866, and declared to be "the legal and valid official map of San Francisco, to determine the lines of the streets and the grades thereof." (See *Brook* v. *Horton*, 68 Cal. 554.) On this map Olive Avenue was delineated, and also on the subsequent Humphrey's Map. The acts provided that the maps when completed were to be delivered to the board, and notice given, by publication, that objections to them might be made by any property holder, and that if no objections were made, or those made were overruled, they were to become final. In the mean time—from the passage of the said act of April 25, 1862, relied on by appellant, until the adoption of the Engineer's Map in 1866, —Olive Avenue was continuously kept open by appellant's grantors, and used by the general public. Under these circumstances, we think that the dedication and acceptance was clearly continuous.

Quite a number of cases involving the dedication of streets and highways have recently been decided by this

court.   The facts in no two of them were exactly alike, and some of them were of difficult solution.   But in none of these cases were any principles stated with which the conclusion of the court in the case at bar at all conflicts.

Judgment and order affirmed.

SHARPSTEIN, J., and FOX, J., concurred.