[Civ. No. 4173. Second Appellate District, Division One.—July 7, 1923.]

THE PEOPLE, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

[1] STREET LAW—VACATION OF PUBLIC STREET—PUBLIC INTEREST OR CONVENIENCE—DETERMINATION OF CITY COUNCIL.—In the absence of fraud or collusion, the decision by the city council of what constitutes public interest or convenience in the matter of the vacation of a public street is legislative in character, and a determination by the city council of such a question is conclusive.

[2] ID.—DISREGARD OF PUBLIC INTEREST OR CONVENIENCE—INVALID ORDINANCE—JUDICIAL REVIEW.—Where a city council, purporting to act under the power granted by the act of 1889 (Stats. 1889, p. 7), passes an ordinance vacating a public street, the court may inquire into the real purpose and the result of such ordinance, and

---

1. Power to vacate street, note, 2 Ann. Cas. 87.

upon its determination that the action of the city council was based upon a monetary consideration paid by a private motion picture corporation and was solely for the benefit and advantage of said corporation, and against real public interest and convenience, the court may declare such ordinance invalid.

[3] ID.—ORDER CLOSING STREET—PUBLIC INTEREST OR CONVENIENCE— EXPRESS DECLARATION UNNECESSARY.—The adoption of an ordinance vacating a public street, under the power granted by the act of 1889 (Stats. 1889, p. 70), constitutes a determination by the city council that the public interest or convenience requires that the street be closed, notwithstanding the ordinance contains no declaration to that effect. (Opinion on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

James, Pace & Smith for Appellants.

U. S. Webb, Attorney-General, Leon French, Deputy Attorney-General, Albert Sherer and Robert Young for Respondent.

HOUSER, J.—In the main this is an appeal by the defendants from a judgment declaring void an ordinance adopted by the city council of the city of Los Angeles which ordered the vacation of that part of Argyle Avenue lying between Sunset Boulevard and Selma Avenue, a distance of 573.3 feet. This appeal further involves an order by the trial court denying defendants' motion to strike certain portions of the complaint, as well as to dismiss the complaint because improperly authorized by the attorney-general; also an appeal by the plaintiff from the order denying plaintiff's application for a preliminary injunction.

Argyle Avenue is 60 feet in width and 1210 feet long. It extends from Hollywood Boulevard on the north to Sunset Boulevard on the south. At a distance of 573.3 feet northerly from Sunset Boulevard Argyle Avenue is intersected by Selma Avenue, running east and west. At about 375 feet to the west and parallel to Argyle Avenue is located a through street, and the same condition prevails as to another street at about the same distance to the east of Argyle Avenue. The defendant Famous Players-Lasky Corporation

owns all the property fronting on either side of that part of Argyle Avenue which was ordered vacated by the ordinance in question. The street was originally acquired by condemnation proceedings in 1906, since which time it has been improved by grading and surfacing the roadway, by cement gutters, curbs, and sidewalks, and by shade trees planted and maintained on the parkways adjoining the sidewalks. The evidence taken at the trial showed that at the time the ordinance of vacation was adopted the lots fronting on Argyle Avenue, as well as the neighborhood immediately adjacent thereto, were closely built up with residences and other structures, and that the street, although not a "main artery" of traffic, was continuously used by the public for general travel on the sidewalks and the roadway in the same manner as similar streets are ordinarily used in a thickly populated suburban district, excepting perhaps that the street was used for parking automobiles to a considerably greater extent than is the ordinary short street in a residence district.

On November 6, 1919, the defendant Famous Players Lasky Corporation presented its petition to the city council of the city of Los Angeles, praying that a part of the street be vacated. The body of the petition is as follows:

"The undersigned, being the owner of all of the abutting property, petition your Honorable Body to vacate that portion of Argyle Avenue in that portion of Los Angeles formerly known as Hollywood extending from Selma Street to Sunset Boulevard.

"The undersigned represent that this is not a thoroughfare in any sense and that they are willing to compensate the City for this land on a fair and equitable basis."

The petition was first referred to the city engineer of the city of Los Angeles, who reported adversely to the proposed vacation on the ground that the street was extensively used by the general public. He further reported that the area proposed to be vacated was reasonably worth the sum of $7,839.30, and recommended that if the street should be vacated the petitioner be compelled to pay into the city treasury "such compensation as it deemed just." Thereafter the city council referred the petition to its committee on public works, which committee reported and recommended, among other things, as follows:

"We have been informed that there is very little traffic on Argyle [avenue] between Sunset boulevard and Selma avenue, the portion proposed to be vacated, and most of this traffic is due to the Lasky Motion Picture Corporation. We therefore recommend, subject to your approval, that the prayer of the petitioners be granted and the street vacated, providing petitioners comply with the provisions of Ordinance No. 17801, N. S., and the public service department is compensated for the expense of *connection* two fire hydrants and the petitioners furnish easements for such public utilities as are affected, particularly gas mains and poles for the Southern California Edison Company and the Telephone Company, and with the further understanding that the petitioners shall pay into the city treasury before the publication of the final ordinance, the sum of $1000 for the street vacated."

In other words, the city's demand was that, before the final ordinance of vacation would be enacted, the petitioner must pay all actual expenses in connection with the closing of the street and in addition thereto must pay into the city treasury the sum of $1,000 "for the street vacated."

With the exception of two motion picture concerns, protests against the proposed vacation of the street were filed with the city council by the owners of all the lots within a district provided by order of the city council as appears in its ordinance of intention to vacate the street, which protests the said council denied and, two days after the $1,000 compensation for the street had been paid into the city treasury, proceeded to adopt the necessary ordinance of vacation of the street as prayed for in the petition of the defendant Famous Players-Lasky Corporation. The final ordinance of vacation of the street contained no declaration or provision, either in substance or effect, that the public interest or convenience of the city of Los Angeles, or of the inhabitants thereof, either required or justified the vacation of the street; but the ordinance did contain a provision that "there are no damages, costs, or expenses arising out of said work, and that no assessment is necessary for said work, and therefore no commissioners are appointed to assess benefits and damages for said work and to have general supervision thereof." The ordinance of intention, however, did state, among other things, that the public interest,

necessity and convenience required the closing of the said street. There is nothing in the act (Stats. 1889, p. 70), under which the city of Los Angeles acquired power in the premises, which requires any declaration by the ordinance of intention that the vacation or abandonment of a street is required by the public interest or convenience. Besides, such declaration and determination by the city council in the instant case was made before any protest was even filed and of necessity before any hearing was had thereon. In other words, the city council determined the case without having first heard the evidence, and after hearing the evidence, so far as any record or official action discloses, failed to determine that "the public interest or convenience" required the "closing up" of the street in accordance with the provisions of the first section of the statute.

Among the findings of the trial court the following appears, to wit: "That in passing said Ordinance No. 40671, New Series (the final ordinance), the City Council was moved thereto by the payment and receipt from the Famous Players-Lasky Corporation of the aforesaid sum of $1,000 for the land vacated, which said sum of $1,000 was paid into the city treasury of the city of Los Angeles by the said Famous Players-Lasky Corporation on the 10th day of August, 1920, and prior to the passage and publication of said ordinance." The court also found "that the said Famous Players-Lasky Corporation, in the payment of said money, understood that the same was paid and received as an *exaction* which the City Council required for the street vacated and for the land occupied by such vacated street; and . . . with respect to the payment of said $1000, the said Famous Players-Lasky Corporation understood that the said portion of Argyle Avenue would not be vacated unless it paid the said sum into the treasury of the city of Los Angeles; and, in that particular, the said Famous Players-Lasky Corporation had no free choice or means of avoiding said payment in obtaining the vacation of said portion of Argyle Avenue"; and that "neither the public necessity nor interest nor convenience required the abandonment of said portion of Argyle Avenue, and that the public derived no benefit therefrom."

To put the matter bluntly, on the evidence adduced the finding of the court was to the effect that, without the inter-

est or convenience of the public being considered in any way, the city council sold a public street to the Famous Players-Lasky Corporation for a consideration of $1,000. While the actual intention of the parties to the transaction was probably not as broad as indicated, the substance of the negotiations was that the defendant Famous Players-Lasky Corporation offered "to compensate the city for this land on a fair and equitable basis," and the city, through its council, fixed the compensation at $1,000 and required the payment of that sum before it would pass the necessary ordinance. Casting aside any consideration of public interest, the city demanded the sum of $1,000 for the passage of the final ordinance, and required that the money be paid in advance. The moving-picture concern had offered "to compensate the city for this land on a fair and equitable basis"; and the city engineer had appraised the property as being of the reasonable value of $7,839.30. Why not demand what it was worth, or $10,000 or $20,000? As appears by the final ordinance, the city incurred no expense in connection with the closing of the street. If the closing of the street was for the public benefit, why require $1,000 as "compensation" when the city actually had nothing to sell? If the demand for $1,000 was not a "hold-up," it was so closely akin thereto as not to disclose any substantial difference between ordinary "transactions" of that nature and the circumstances here involved. It is perfectly apparent that the street would not have been vacated, public interest, or not, if the $1,000 had not been paid. The transaction bears all the indicia of a bargain and sale. If the payment of the $1,000 was not the entire "moving cause" for the abandonment of the street, it was at least part and parcel of it.

The statute to which reference has heretofore been made authorizes the vacation of a public street only "whenever the public interest or convenience may require." [1] It appears to be conceded by counsel for the respective parties herein, and the authorities are quite uniform, that as a general legal proposition, in the absence of fraud or collusion, the decision by the city council of what constitutes public interest or convenience in a matter of the sort here in question is legislative in character, and that a determination by the city council of such a question is conclusive. (*Santa Ana* v. *Harlin*, 99 Cal. 538 [34 Pac. 224]; *Wulzen* v. *Board,*

101 Cal. 15 [40 Am. St. Rep. 17, 35 Pac. 353]; *Symons* v.
*San Francisco,* 115 Cal. 555 [42 Pac. 913, 47 Pac. 453];
*Brown* v. *Board,* 124 Cal. 274 [57 Pac. 82]; *Pool* v. *Sim-
mons,* 134 Cal. 624 [66 Pac. 872].)    [2]   According to the
evidence and the findings by the court in this case, there was
no such thing as the public interest or convenience of the
public taken into consideration by the city council. So far
as the record discloses, the only concern of the city council
was the $1,000 compensation and the benefit and advantage
of a private motion picture corporation. There are many
cases bearing on the right of the courts to inquire into the
*motives* of the legislative body in a case of this nature.    In
*Ables* v. *Southern Ry. Co.* (1909), 164 Ala. 356 [51 South.
327], where a street was vacated on condition that the rail-
road company which received the benefit thereof would con-
struct a depot on a part of the land which it received; in
*People* v. *Wieboldt,* 233 Ill. 572 [84 N. E. 646], where an
alley was vacated on the payment to the city by the benefi-
ciary of the sum of $100 annually and the performance by
the beneficiary of certain other acts, including the paving
of a certain portion of a street and the dedication of certain
other property for public use; in *Island Co.* v. *Babcock,* 17
Wash. 438 [50 Pac. 54], where a county board located and
built a county courthouse on certain property under an
agreement with certain persons that, if so built, the land
upon which the courthouse was constructed would be paid
for by such persons; and in each of the following cited cases
where similar legislative acts were adopted for the benefit of
private persons, to wit: *Tilly* v. *Mitchell-Lewis Co.,* 121 Wis.
1 [105 Am. St. Rep. 1007, 98 N. W. 969; *Knapp, Stout &
Co.* v. *St. Louis,* 156 Mo. 343 [56 S. W. 1102]; *Glasgow* v.
*St. Louis,* 107 Mo. 198 [17 S. W. 743]; *Spitzer* v. *Runyan,*
113 Iowa, 619 [85 N. W. 782]; *Windle* v. *City of Valparaiso,*
62 Ind. App. 342 [113 N. E. 429]; *Ponishil* v. *Hoquiam
Sash & Door Co.,* 41 Wash. 303 [83 Pac. 316]; *City of
Marshalltown* v. *Forney,* 61 Iowa, 578 [16 N. W. 740], it
was held that the courts had no power to inquire into the
*motives* which induced the enactment of the questioned ordi-
nance. As distinguished from the *"motive"* and depending
entirely upon the *"purpose"* or the *"result"* of a legisla-
lative act, where the intent of the legislative body, as shown
by the evidence, was to disregard the public interest or

convenience and to confer a benefit upon a private individual or a corporate body, the following cases are to the effect that the court has authority to review the matter and determine the validity of the ordinance: *Kansas City* v. *Hyde,* 196 Mo. 498 [113 Am. St. Rep. 766, 7 L. R. A. (N. S.) 639, 96 S. W. 201]; *Smith* v. *McDowell,* 148 Ill. 51 [22 L. R. A. 393, 35 N. E. 141]; *Ligare* v. *Chicago,* 139 Ill. 46 [32 Am. St. Rep. 179, 28 N. E. 934]; *Corcoran* v. *Railway Co.,* 149 Ill. 291 [37 N. E. 68]; *DeLand* v. *Dixon Power & Lighting Co.,* 225 Ill. 212 [80 N. E. 125]; *Horton* v. *Williams,* 99 Mich. 423 [58 N. W. 369]; *Van Witsen* v. *Gutman,* 79 Md. 405 [24 L. R. A. 403, 29 Atl. 608]; *Louisville* v. *Bannon,* 99 Ky. 74 [35 S. W. 120].

The case of *Kansas City* v. *Hyde,* 196 Mo. 498 [113 Am. St. Rep. 766, 7 L. R. A. (N. S.) 639, 96 S. W. 201], was one where it appeared, not on the face of the proceedings but by evidence entirely outside the record of the legislative act, that the purpose was to condemn a street for the use of the railroad company. Among other things, the court said: "The law deals with results and not with mere forms in such matters. . . . The purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is . . . a legitimate subject of judicial investigation, for the right to exercise the power of eminent domain is, in all cases, limited by the purpose for which it shall be exercised—as thus, private property may be condemned for public use, but it may be shown that the use, in fact, is not public but private." Later in the opinion the court said: "But suppose the council, intending the condemnation to be really for the sole benefit of the individual, in order to give it validity, should say in the ordinance that the property was to be condemned for a public street: would such a false recital in the ordinance be conclusive? Would it put the man whose property was to be taken, and the people in the district who were to be taxed to pay for it, beyond the protection of the constitutional guarantee that their property should not be taken for private use? Could the city council, by a false recital in the ordinance, give it a validity which it would not have if it recited the truth? And when the city comes to ask the aid of the court to carry the ordinance into effect, is it possible that the court must be a mere tool to do the will of the

council, with no power to inquire into the truth of the matter? What protection has a citizen for his constitutional rights, if the courts cannot look through a sham and see the truth? And how can the courts learn the truth if they must take the recitals in the ordinance as conclusive, and reject all evidence to show their untruth? What a reproach it would be to our system of jurisprudence and how humiliating would be the attitude of our courts if they were so powerless! But our law is not so lame, and our courts not so impotent. The courts in such case will hear the evidence and find the facts. If the truth lies only in an unwritten agreement or understanding, it can be proven only by oral testimony, and that being the best evidence of which the fact is susceptible, the court must receive and weigh it.''

It is said in *Horton* v. *Williams,* 99 Mich. 433 [58 N. W. 369], that ''the advantage which the public derives from the discontinuance of a way must arise from the vacation itself, rather than from the use to which the property is put, or from the fact that the city, through a deal with the individual specially interested, is to have an interest in the property acquired by such vacation. A city cannot barter away streets and alleys, nor can it do indirectly, by invoking its power of vacating ways, what it cannot do directly. Streets and alleys are not to be vacated at the instance of individuals interested only in the acquisition of the vacated property, and the exercise of legislative discretion in such matters must, at least upon the face of the record, be free from affirmative evidence that such discretion was invoked for individual gain, and its exercise influenced by an offer to divide the property acquired.''

Treating of the subject having to do with supervision by the courts of legislative acts by city councils, McQuillin in his work on Municipal Ordinances, volume 1, section 378, page 881, says: ''While the rule of nonjudicial interference in the respects mentioned is well established, certain limitations are recognized. Municipal corporations are not completely beyond judicial review and control, even in the exercise of the jurisdiction and discretion delegated to them by the legislature. True, that discretion must and will be accorded broad scope and great deference. The honest judgment of municipal authorities as to what is promotive of the public welfare must ordinarily control, although not in ac-

cord with the views of the courts. Nevertheless the delegation of legislative power to subordinate political divisions of the state is solely for public purposes and must be exercised with reference to them. If the act be so remote from every such purpose that no relation thereto can within human reason be discovered, such act must be deemed excluded from the delegation. To that extent, then, courts will inquire into the purpose and policy of municipal conduct and will hold unauthorized and invalid acts which are wholly unreasonable.'' In volume 3, section 1403, on page 2985, the same author says: ''There are three rules often declared in the decisions in regard to the purpose and motive for vacating a street and the power of the courts to investigate the motives or interfere with the discretion of municipal authorities in regard thereto. The first rule is that a street or alley cannot be vacated for a private use, that is, for the purpose of devoting it to the exclusive use and benefit of a private person or corporation, but it may only be vacated to promote the public welfare. Thus, there is no power, it is generally held, to vacate a street or alley on payment of a cash consideration by an abutter.'' Further dealing with the subject, Mr. McQuillin, after stating the general rule that the motives of the municipal authorities cannot be inquired into by the courts, says the courts ''may consider the purpose accomplished and if the purpose effected thereby is illegal, as where a street is vacated for the sole purpose of benefiting abutters, may set it aside.'' And on page 2989 he adds: ''Other courts proceed on the theory that while the common council has discretion to determine when private property shall be taken for public use and such discretion is final and exempt from the control of the courts, yet it is the duty of the judiciary to decide whether the use for which the property is taken by vacating a street or alley is public or private and, if the use is a private one, to declare the ordinance invalid.''

The case of *Van Witsen* v. *Gutman*, 79 Md. 405 [24 L. R. A. 403, 29 Atl. 608], contains the statement that ''whether the use is public or private is a question for the judiciary to decide, . . . Where . . . ordinances are drawn in question, it is the duty of the judiciary to decide whether the use for which private property is taken is public or private, in the same manner and on the same principles as

it would decide in the case of an act of the state legislature.''

Based on the evidence on this particular point, the court found ''that neither the public necessity nor interest nor convenience required the abandonment of such portion of Argyle Avenue, and that the public derived no benefit therefrom.''

The defendant Famous Players-Lasky Corporation in its petition to the city council praying for the vacation of the street offered ''to compensate the city for this land on a fair and equitable basis''; the recommendation to the city council by its committee on public works was, among other things, ''that the petitioner shall pay into the city treasury before the publication of the final ordinance the sum of $1000 for the street vacated''; the affidavits of the several councilmen who voted for the passage of the ordinance which effected the vacation of the street, and which affidavits were used only on the motion by plaintiff for a preliminary injunction (and which can be considered here only in connection with the appeal from the order denying the preliminary injunction), show that the purpose of vacating the street was ''to foster and promote the motion picture industry in the city of Los Angeles as a whole and not this defendant in particular, and to encourage the maintenance and building up of said industry by its co-operation through said action as a precedent to maintain the said industries in the city of Los Angeles and thereby to enable the city to retain its prestige as the motion picture center of the world, and also for the mutual benefit and advantage of the city and its inhabitants and the said motion picture industries,'' and ''because all of the 375-foot blocks fronting on Sunset Boulevard must eventually, to accommodate the growth and expansion of the motion picture industries upon said boulevard, be made into 800-foot blocks by the vacation of intersecting streets between Sunset Boulevard and Selma Avenue.'' Furthermore, that ''the vacation of said portion of said Argyle Avenue would not work any injury or any inconvenience to them [protestants], but would, on the other hand, tend to induce the motion picture industries in Hollywood and elsewhere to expand their business, enlarge their establishments, and thus enable the city not only to hold these establishments as a permanent asset of the city, but benefit the in-

habitants of the city in many business ways and at the same time help make the city a great as it is a growing city of industry and commerce.'' The statute (Stats. 1889, p. 70), which is the basic authority for the vacation of public streets, contains a provision for the ascertainment of expenses, damages, etc., in connection with the vacation of a given street, and the levying of an assessment for the payment thereof; but in the instant case, it appears by the final ordinance of vacation ''that there are no damages, costs or expenses arising out of said work and that no assessment is necessary for said work''—again supplying the inference, at least, that the entire scheme was one for the sole benefit of the defendant Famous Players-Lasky Corporation. The evidence showed that no public benefit whatsoever accrued, or was expected to accrue, from the closing of the street. So far as the record discloses, nothing was contemplated by the city council in the way of a systematic rearrangement of public streets, or the construction of any public improvement, or the platting of any public park, or anything of a similar character, which would either necessitate, or render advisable, the vacation of the street. The effect of the abandonment of the street was to take from the public whatever advantage or convenience the use of a well-kept street afforded, and to substitute nothing of a public nature in its place. Negativing the provisions of the statute, neither the public interest nor public convenience required or in any manner necessitated or suggested the closing of the street; on the contrary, every reasonable consideration would indicate that it was altogether to the advantage and benefit of the general public that the street should remain open to public use. It follows that the only interest or convenience subserved by the act of the city council in ordering the vacation of the street was the private interest of the defendant Famous Players-Lasky Corporation. In such circumstances the precedents heretofore cited are ample authority for the action of the lower court not only in maintaining its right to inquire into the real purpose and the result of the ordinance, but in declaring such ordinance invalid. Any other rule would permit the city council to legally close any or even all the principal streets of a city. For instance, if we were to assume the true rule to be that, upon the mere recital in the ordinance of abandonment that the

public interest or convenience so required, the decision by the city council, as expressed in its ordinance, becomes final and conclusive, and beyond the reach of judicial inquiry, nothing would prevent the city council of the city of Los Angeles from effectually closing Broadway in its entire length, nor a similar body in the city of New York from closing Wall Street. It cannot be that in such circumstances, coupled with a showing, such as here, that the whole scheme was simply one in the proposed aid of a private concern, and against real public interest and convenience, the courts would be powerless to render adequate relief and substantial justice. The rights of the public cannot be overwhelmed and defeated by any such subterfuge; they cannot be made to depend upon the exercise of either individual whims or fancies of members of the city council expressed through the medium of a legislative body. It is essentially a judicial question whether the vacation of a street be for a public or for a private benefit. Otherwise the will of the city council as expressed in its ordinance of vacation, through the simple expedient of declaring such vacation to be a public benefit, would become supreme, no matter how arbitrary such action nor how great the abuse of discretion so exercised. (*New Central Coal Co.* v. *George's Coal C. & I. Co.*, 37 Md. 560.) Legal fraud may consist in a gross abuse of discretion, and the facts in the instant case indicate at least such gross abuse. That in such circumstances the act of the city council in vacating the street in question is not conclusive upon the courts, see *Ellis* v. *Commissioners*, 38 Cal. 629, and the same principle of law is announced in the following cases: *Los Angeles etc. Co.* v. *County of Los Angeles*, 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384]; *Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 24 [L. R. A. 1918E, 197, 148 Pac. 217]; *La Grange etc. Co.* v. *Carter*, 142 Cal. 560 [76 Pac. 241].

By far the greater part of that portion of the appeal herein which involves the order by the trial court denying defendant's motion to strike certain portions of the complaint is disposed of by what has been said heretofore upon the question of the right of the court to inquire into the power of the city council in passing the ordinance of abandonment of the street in question. Such portions of the motion to strike as are not so covered, while possibly not

necessary allegations of the complaint, were harmless as affecting the main issue.

That appellant's motion to dismiss the complaint for the alleged reason that the plaintiff was improperly and unlawfully authorized by the attorney-general was not well taken is settled by the rulings in the following cases: *People v. Beaudry*, 91 Cal. 213 [27 Pac. 610]; *People v. Davidson*, 30 Cal. 388; *People v. Gold Run D. & M. Co.*, 66 Cal. 152 [56 Am. Rep. 80, 5 Pac. 1152; *People v. Pope*, 53 Cal. 437; *People v. Blake*, 60 Cal. 497; *People v. Reed*, 81 Cal. 70 [15 Am. St. Rep. 22, 22 Pac. 474]; *People v. Hibernia Sav. etc. Society*, 84 Cal. 634 [24 Pac. 295]; *People v. Oakland etc. Co.*, 118 Cal. 234 [50 Pac. 305].

By reason of the decision herein that plaintiff is entitled to the relief demanded in the complaint, it becomes unnecessary to pass upon plaintiff's appeal from the order of the trial court denying the application for a preliminary injunction.

The judgment is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 1, 1923, and the following opinion then rendered thereon:

THE COURT.—In the petition for rehearing herein, it appears that objection is taken by appellants to the statement contained in the opinion to the effect that the determination by the city council as to the question of public interest and convenience requiring the closing of the street was made before any protest was filed and necessarily before any hearing was had thereon. The facts are that after the petition for vacating the street was presented and before the ordinance of intention was passed, a protest was filed, but it is only after the ordinance of intention has been passed and notice of public work has been posted by the street superintendent that protests are authorized to be filed. (Sec. 4, Stats. 1889, p. 70.) It was regardless of such protests that the city council made its determination, as expressed in its ordinance of intention, "that the public interest, necessity and convenience" required that the street be

closed.   Other protests, which were subsequently filed, were overruled by the city council.   **[3]**   The final ordinance contains no declaration to the effect that the public interest or convenience requires that the street be closed; but it must be conceded that the case of *Brown* v. *Board of Supervisors,* 124 Cal. 278 [57 Pac. 82], is authority for the rule that ''the adoption of the order is a determination by the board that the public interest or convenience requires the improvement.''   After such modification of the original opinion herein, we are satisfied with the views of the court as therein expressed.

The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 5, 1923.