[No. 14172.   Department One. — September 16, 1891.]

## THE PEOPLE ex rel. JOHN ROBARTS, Respondent, v. PRUDENT BEAUDRY et al., Appellants.

Public Nuisance — Obstruction of Street — Abatement — Action by People — Authority of Attorney-General. — The attorney-general has authority to institute an action in the name of the people to enjoin or abate a public nuisance caused by obstructions upon a public street in a city.

Dedication of Street — Power of City over Pueblo Lands — Adoption of Official Map Designating Street. — A city which is the successor of a Mexican pueblo has power to lay out and dedicate streets upon the lands of the pueblo; and the adoption by a city ordinance of a map as an official map of the city, which is filed as such, and upon which a street is clearly marked out and defined through pueblo land, in the absence of any showing to the contrary, constitutes a dedication of the land to the public as a public street.

Id. — Ineffectual Dedication — Transfer of Title. — A strip of pueblo land which had been conveyed by the city prior to the adoption of its official map dedicating a street cannot be affected by such dedication.

Id. — Action by People to Abate Nuisance — Evidence — Judgment against City — Res Adjudicta. — A judgment roll in an action of ejectment by a city to recover possession of property to which it claimed title as a public street, wherein it was adjudged that the city had conveyed the land to the defendants prior to the dedication of the street, is admissible in evidence in a subsequent suit brought in the name of the people of the state by the attorney-general against the same defendants and their grantees to have the land declared a public street, and to have it decreed that the defendants remove therefrom all buildings, houses, fences, and all obstructions erected by them thereon.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Chapman & Hendrick*, for Appellants.

Where a street has never been in fact open, and possession has been had of the property claimed to be in the street for a long time, the burden is upon him who claims that the property has been dedicated as a public street to prove it, and that, too, by satisfactory evidence. (*Tate* v. *City of Sacramento*, 50 Cal. 242; *Miller* v. *Town of Aracoma*, 30 W. Va. 606.) The vital principle of a dedication is the intention to dedicate, and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. But this dedication is never to be presumed without evidence of the unequivocal intention on the part of the owner. (*Miller* v. *Town of Aracoma,* 30 W. Va. 606; *Shellhouse* v. *State*, 110 Ind. 509; *In re Wayne Avenue*, 124 Pa. St. 135; 10 Am. St. Rep. 575; *People* v. *Reed*, 81 Cal. 70; 15 Am. St. Rep. 22.) The city had no power to dedicate the property, even if it owned it, as its power extended only to the laying out, extending, altering, or widening of streets or alleys, and an ordinance adopting a certain map as official is not the laying out or the extending of a street, within the meaning of such a provision. (See Act of 1850, pp. 88, 89, 155; General Incorporation Act, sec. 11; *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542.) The highways of a state are under the paramount and primary control of the legislature, and all authority of municipalities over streets depends upon their charters, or legislative enactments relative to them. (Dillon on Municipal Corporations, sec. 680, and notes 1 and 2 on p. 678.) Where power is given to a municipal corporation to sell its lands, it cannot dedicate them. (*Wright* v. *Town of Victoria*, 4 Tex. 375.) Merely laying off streets on a town plat is not a dedication. (*Scott*

v. *Cheatham*, 12 Heisk. 713; *Pierpoint* v. *Harrisville*, 9 W. Va. 215; *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542; *Shellhouse* v. *State*, 110 Ind. 509; *Spalding* v. *Bradley*, 79 Cal. 449.) The judgment record in the action brought by the city against Prudent and Victor Beaudry, defendants, was admissible in evidence, and conclusive. (*San Francisco* v. *Holladay*, 76 Cal. 18; Bigelow on Estoppel, 3d ed., 60, 74, 75; *Glaze* v. *Citizens' Nat. Bank*, 116 Ind. 492; *Bunting* v. *Saltz*, 84 Cal.168; *Munro* v. *Pacific Coast etc. Co.*, 84 Cal. 515; 18 Am. St. Rep. 248; *Hartigan* v. *S. P. R'y Co.*, 86 Cal. 142; *Davidson* v. *State*, 63 Ala. 432; *Kolb* v. *Swann*, 68 Md. 516; *Shumate* v. *Fauquier*, 84 Va. 574; *Holton* v. *Taylor*, 80 Ga. 508; *Furneaux* v. *First Nat. Bank*, 39 Kan. 144; 7 Am. St. Rep. 541; *Harvey* v. *Ward*, 49 Cal. 124.)

*Richard Dunnigan*, and *Andrew Glassell*, for Respondent.

The authority of the attorney-general to institute and maintain actions of this character in the name of the people of the state has been so often passed upon and upheld that it would seem idle now to question it. (*People* v. *Stratton*, 25 Cal. 246, 247; *People* v. *Gold Run D. & M. Co.*, 66 Cal. 152; 56 Am. Rep. 80; *People ex rel. Alvord* v. *Pope*, 53 Cal. 437; *People etc. ex rel. Harris* v. *Blake*, 60 Cal. 497.) The fact of defendants maintaining this nuisance for seventeen years before this action was brought is no defense, equitable or otherwise; no lapse of time can legalize a public nuisance. (Civ. Code, sec. 3490; *People ex rel. Alvord* v. *Pope*, 53 Cal. 437; High on Injunctions, 787; 3 Pomeroy's Eq. Jur., sec. 1349.) Acceptance by the public is presumed, if the thing be of public convenience. If a town recognizes a street in its maps, it is direct evidence of acceptance. If the dedication be of a highway, it becomes *ipso facto* a highway the moment it is dedicated and accepted by the public. (Washburn on Easements, 3d ed., 202–206, 226.) Where a plat is made and recorded, the requisite intention to dedicate is generally indis-

putable. A sale of lots with reference to such plat amounts to immediate and irrevocable dedication. (Dillon on Municipal Corporations, secs. 636, 640.) The power given to the city to lay out streets certainly embraced the incident and consequence of such laying out, to wit, the declaration of such streets, as streets. (Dillon on Municipal Corporations, sec. 635; *Boston* v. *Lecraw*, 17 How. 426; *Cincinnati* v. *White*, 6 Pet. 431; *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542.) There was no error in rejecting the judgment roll as to appellant Beaudry, as it could have had no effect in the case, even if it had been admitted in evidence for what it was worth. (Code Civ. Proc., sec. 1908.)

BELCHER, C. — It is alleged in the complaint in this case that a certain described strip of land was, on the first day of October, 1868, and ever since has been, a part and portion of a public street in the city of Los Angeles, now commonly known as Buena Vista Street; that defendants, on or about the first day of April, 1871, erected and maintained, and still do maintain, on that part of the street described, certain buildings, posts, fences, and other things, which, ever since they were so erected, have obstructed, and still do obstruct, the said street, and hinder and prevent the people of the state of California from the free use thereof as a public street, and are public nuisances and illegal obstructions thereon. And the prayer is, that the strip of land described as being a part of Buena Vista Street be declared and decreed to be a common public street and highway, free for the travel of all persons, and that the defendants be ordered and decreed to remove therefrom the buildings, houses, and fences, and all obstructions whatsoever, now obstructing or that may obstruct the free use of said street, and be enjoined from again erecting the same or any other obstructions thereon.

The defendants, Beaudry and Ramsaur, alone answered. They deny that the land described in the complaint, or any portion thereof, is now, or was on the first

day of October, 1868, or ever was, any part or portion of
the public street in the city of Los Angeles known as
Buena Vista Street, or of any public street or highway
whatever; deny that on the first day of April, 1871, or at
any other time, they erected and maintained, or still do
maintain, on any part of Buena Vista Street, or on any
other street in the said city, any buildings, posts, fences,
or other things; deny that any buildings, posts, fences,
or other things erected or maintained by them have
obstructed or do obstruct the said street, or any other
street, or hinder or prevent the people of the state, or
any of them, from the free use of the same as a common
public street, or at all.

When the case was called for trial, the defendants ob-
jected to the introduction of any evidence on the part of
the plaintiff, on the ground that the complaint did not
state facts sufficient to constitute a cause of action.    The
objection was overruled, and an exception reserved.    It
was then admitted that a patent had been issued by
the United States to the city of Los Angeles, conveying
the lands within the city limits, upon confirmation of the
claim of the city authorities that the city was the suc-
cessor of a Mexican pueblo, and that the strip described
in the complaint was within the boundaries of the lands
so conveyed; also, that the city was incorporated by an
act of the legislature approved April 4, 1850, according
to the provisions of the general law for the incorporation
of cities, and with all the rights which had formerly per-
tained to the said pueblo.

The plaintiff then introduced in evidence a map, and
an ordinance passed by the mayor and common council
of the city, and approved November 17, 1868, adopting
the map and declaring it to be an official map of the
city.    There is written on the map: " Official map No.
3 of Los Angeles City," and " Map of a tract of land
situate between Temple, Buena Vista, Eternity, and
Short streets, and the land of the Protestant Cemetery,
in the city and county of Los Angeles, state of Cali-
fornia, subdivided in July and August, 1868, by order of

the mayor and common council of Los Angeles City."
As represented, Buena Vista and Eternity streets are
continuations of the same street, and the tract of land
referred to lies on the westerly side of them, and is inter-
sected by other streets, and subdivided into blocks and
lots.   All the streets are marked out by colored lines,
and Buena Vista Street has written on it, "No. 43¼, E.
60 feet wide." The map also shows another street, called
New High Street, which runs parallel with Buena Vista
and Eternity streets, and is easterly therefrom; but the
land between the last-named streets is not subdivided or
marked.

The plaintiff also introduced in evidence a diagram,
made by the city engineer, showing Buena Vista Street
as laid down on map No. 3, and the strip in contro-
versy, on which defendants are alleged to have intruded.
The strip is on the eastern side of the street, and at its
south end extends into the street 21.97 feet, and at
other points about the same distance.   It was proved
by the engineer that the diagram was a correct repre-
sentation of the premises, and by him and other wit-
nesses that the defendants had had the portions of the
strip respectively claimed by them inclosed as parts of
their adjacent lots for a considerable number of years.

Upon this evidence the plaintiff rested, and it was
claimed that the adoption and filing of map No. 3 con-
stituted a dedication to the public as a public street of
all the land represented thereon as Buena Vista Street.

The defendants then introduced in evidence two deeds
made by the "mayor and common council of the city of
Los Angeles" to Hiram McLaughlin, one in 1856 and
the other in 1857.   The deeds conveyed two adjoining
parcels of land on the west side of New High Street,
which were described, and for a more particular descrip-
tion reference was made to a map made by one Walde-
mar, deputy county surveyor.   And in connection with
the deeds it was proved that defendant Beaudry, in
April, 1868, succeeded through sundry mesne convey-
ances to the title of McLaughlin to the two parcels, and

that about the same time he inclosed them with a fence. It was proved that the land was then hilly, wild, and unimproved, and that there was then no road of any kind where Buena Vista Street is now located.

The defendants next introduced in evidence the copy of a map of the tract of land conveyed to McLaughlin, as aforesaid, showing that the same had been subdivided into lots, two of which were marked lots 13 and 15. At the head of this map is a statement that the land was "subdivided August 20, 1868, under the direction of Mr. P. Beaudry, by George Hanson," the county surveyor, and at the foot of it is a certificate, signed by the county recorder, that the map is "a true copy of the original, recorded November 11, 1868, at ten hrs., at request of P. Beaudry." It was then admitted that the defendant Beaudry still retained whatever title he had acquired to lots 13 and 15 in the tract, which is now called the Arcadia tract, and that the fence referred to as inclosing the said property, claimed to be a part of Buena Vista Street, ran along the western boundary of the said lots. It was also admitted that defendant Ramsaur had succeeded to the title to another lot described on the map.

The defendants next offered in evidence the judgment roll in an action commenced in the superior court of Los Angeles County on the thirty-first day of March, 1884, by the city of Los Angeles against Prudent Beaudry and Victor Beaudry. The complaint was in the ordinary form in ejectment to recover possession of lots 13 and 15 of the Arcadia tract. The defendants by their answer denied all the averments of the complaint, and to show that the plaintiff had no title to the demanded premises, set up the conveyances to McLaughlin, hereinbefore referred to. They alleged that these conveyances were intended to and did include the demanded premises, and that they and their grantors had owned, possessed, and paid taxes on the same since the date of the deeds to McLaughlin. They further alleged that in one of the deeds to McLaughlin there was a mistake in one

of the courses named, and they asked to have the deed reformed and corrected in this respect. After trial, the court found all the facts as alleged in the defendants' answer, and on the 17th of April, 1885, judgment was entered reforming one of the deeds to McLaughlin as prayed for, and adjudging that one of the defendants was the owner of the lots sued for, and that the plaintiff take nothing by its action.

In connection with the offer of this judgment roll in evidence, counsel stated that " the defendants proposed to show that lots 13 and 15 of the Arcadia tract included the property, or a considerable portion of the property, in controversy in this action, and being the property next to Mr. Glassell's lot; that the line of the Arcadia tract on the westerly side corresponded with Mr. Beaudry's fence as it was located in 1868, and has been there ever since."

The plaintiff objected to the offered evidence, upon the ground that the parties and the issues in that action were not the same as in this, and hence the evidence was inadmissible. The court sustained the objection, and the defendants excepted to the ruling.

The case was then submitted for decision, and the court found that all the allegations of the complaint were true, and all the allegations of the answer were untrue, and entered judgment accordingly. From that judgment, and an order denying a new trial, the defendants, Beaudry and Ramsaur, appeal.

1. The appellants contend that the attorney-general had no authority to institute the action, and hence that it should have been dismissed. But the obstructions complained of, if they were upon a public street, and of the character alleged, constituted public nuisances; and it has often been held that the attorney-general may bring an action in the name of the people to enjoin or abate such nuisances. (*People* v. *Davidson*, 30 Cal. 388; *People* v. *Gold Run etc. Co.*, 66 Cal. 138; 56 Am. Rep. 80; *People* v. *Pope*, 53 Cal. 437; *People* v. *Blake*, 60 Cal. 497; *People* v. *Reed*, 81 Cal. 70; 15 Am. St. Rep. 22; *People*

v. *Hibernia Savings etc. Society*, 84 Cal. 634.)   The four
cases last cited were simi.ar to this one, and this con-
tention cannot therefore be sustained.

2. It is also contended that there was no evidence
showing that Buena Vista Street was ever dedicated to
the public as a public highway.   But the city had power
to lay out and dedicate streets, and on map No. 3 Buena
Vista Street was clearly marked out and defined.   It
would seem, therefore, that when the ordinance was
passed, and the map adopted and filed as an official map
of the city, it must have been intended that the streets
represented on the map should thereafter be public
streets of the city.   It was not necessary that they should
have been actually constructed and made ready for travel
at that time.   We think, therefore, if the city owned the
land represented as Buena Vista Street, that the ordi-
nance and map, in the absence of any showing to the
contrary, should be held sufficient evidence of a dedica-
tion of the land to the public as a public street.

3. It is further contended that the court erred in re-
fusing to admit in evidence the judgment roll offered
by appellants.

The ruling seems to us erroneous, for the following
reasons.   The principal question involved in that case
was as to whether or not the deeds made by the city to
McLaughlin in 1856 and 1857 conveyed the demanded
premises, and it was conclusively determined by the
judgment that they did.   The reformation of one of the
courses related back to the date of the deed, and made
it read as it would have read if correctly written at the
time.   Now, if the land so conveyed included, as claimed,
the strip of land in controversy here, then it necessarily
follows that the city could not, in 1868, dedicate that
strip as a part of a public street, because it had no title
to it.   One of the issues in this case was, whether or not
the strip was a part of the street, and its determination
depended upon whether the city owned the land at the
time of its attempted dedication.   Upon this issue the
judgment roll in the other case, as it seems to us, was

relevant evidence, and should have been admitted. In legal effect, the parties and the issues in the two cases were the same. But counsel for respondent say: "It will be observed that this point only affects the case of the appellant Beaudry, as the other appellant, Ramsaur, was not in any respect a party in or to that judgment roll." It is true that Ramsaur was not a party to the former action, but he holds another lot of the same tract under Beaudry, and his right to it depends upon the title which was then litigated. Under these circumstances, we think the record admissible in his favor as well as in Beaudry's.

We advise that the judgment and order be reversed, and the cause remanded for a new trial.

Vanclief, C., and Temple, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

Paterson, J., concurring. — It is unnecessary to determine in this action whether a judgment entered in an action between the city and an individual is a bar to an action by the people against another or the same defendant, where the question at issue in each case is, whether the land in controversy has been dedicated to public use as a street. The judgment referred to in the foregoing opinion was admissible, because it was one of the muniments of defendants' title.

Hearing in Bank denied.