[No. 15729. In Bank.—September 13, 1897.]

# THE PEOPLE, Appellant, v. OAKLAND WATER FRONT COMPANY et al., Respondents.

ACTION TO QUIET TITLE OF STATE—LANDS IN HARBOR OF OAKLAND AND ALAMEDA—AUTHORITY OF ATTORNEY GENERAL.—The attorney general has authority to institute an action in any case in which the rights and interests of the people of the state are directly involved, without any new authority expressly conferred by law; and may institute an action to quiet the title of the state to lands in navigable waters constituting the harbor of the cities of Oakland and Alameda, and to determine adverse claims made thereto.

ID.—MODE OF TESTING AUTHORITY OF ATTORNEY GENERAL—DEMURRER—WANT OF CAPACITY TO SUE—MOTION TO DISMISS.—The question as to the authority of the attorney general to sue in the name of the state is not properly presented by a demurrer for want of capacity in the plaintiff to sue; but the proper practice is to move to dismiss the information on the ground, among others, that the attorney general had no authority or power to institute or prosecute the proceeding in the name of the state.

ID.—JURISDICTIONAL QUESTION—JUDICIAL NOTICE—The authority of the attorney general to sue in the name of the state presents a jurisdictional question; and the court is bound to take judicial notice, whether he has or has not authority to institute the proceeding under the constitution and laws of the state.

ID.—DEMURRER TO COMPLAINT OF STATE—JUDICIAL NOTICE—GRANT OF TIDE LANDS TO OAKLAND—CHARTER AND AMENDMENTS—DESCRIPTION INCLUSIVE OF OTHER LANDS.—In passing upon a general demurrer to a complaint by the state to quiet its alleged title to lands in the harbor of the cities of Oakland and Alameda, lying between high tide and ship channel, to a depth of twenty-four feet at ordinary low tide, in the bay of San Francisco and San Antonio creek, and to determine adverse claims made thereto by the city of Oakland and other defendants, and to restrain and abate obstructions therein, it is proper for the court to take judicial notice of the grant by the state to the town of Oakland of lands within its corporate limits lying between high tide and ship channel, made by the act of May 4, 1852, incorporating the town, and also of the act of March 25, 1854, incorporating the city as successor of the town, and of other acts amendatory of and supplemental to the charter of Oakland; but inasmuch as the description in the complaint is not coincident with a proper construction of the grant to the town, but appears to be inclusive of lands in navigable waters beyond the line of low tide, and may include lands lying in the eastern basin of the estuary, outside of the corporate limits of the town, and the complaint states a cause of action in favor of the state, the demurrer thereto is improperly sustained.

ID.—CONTRACTION OF SOUTHERN BOUNDARY OF OAKLAND—RENUNCIATION OF PART OF GRANT—RESUMPTION OF CONTROL BY STATE.—The state having, by recent legislation, contracted the southern boundary of Oakland so as to exclude from its limits the southern half of the estuary, such exclusion amounts to a renunciation on the part of the city, and resumption by the state of the control of so much of the grant as may have been covered by the excluded portion of the city.

ID.—CONDITIONS SUBSEQUENT—FORFEITURE OF GRANT—PLEADING.—The question whether the grant was forfeited to the state by breach of conditions subsequent cannot be considered, where the allegations of the complaint of the state are not so framed as to support an action to enforce such a forfeiture.

ID.—INJUNCTION—OBSTRUCTION OF NAVIGATION BY GRANTEES OF STATE—PUBLIC NUISANCE—INDEPENDENT ACTS OF SEVERAL DEFENDANTS—MISJOINDER—SEVERAL ACTIONS NECESSARY.—A grant by the state of the soil under navigable waters carries with it no right to obstruct navigation, and the state may enjoin its grantees or their successors from erecting or maintaining structures which will impair or interfere with the exercise of the public right of navigation, so as to constitute a public nuisance; but where each of several defendants is acting independently of the others in the erection and maintenance of separate structures obstructing navigation, it is a misjoinder of causes of action and of parties defendant to join them in one action ·to abate nuisances, but each must be sued in a separate action.

APPEAL from a judgment of the Superior Court of Alameda County.   F. W. Henshaw, Judge.

The facts are stated in the opinion of the court.

W. H. H. Hart, Attorney General, and Aylett R. Cotton, for Appellant.

· The complaint in this case is similar to the information or bill in equity in the Chicago case, and states a cause of action. (*Illinois Cent. R. R. Co. v. Illinois*, 146 U. S. 387.)   The attorney general had authority to institute this action.   (*People v. Stratton*, 25 Cal. 242; *People v. Gold Run Ditch etc. Co.*, 66 Cal. 138; 56 Am. Rep. 80; *County of Yolo v. Sacramento*, 36 Cal. 193; High on Injunctions, secs. 761, 1303.)   Judicial notice could not properly be taken upon demurrer of any grant made to Oakland by the act of May 4, 1852, judicial notice being merely a species of evidence where there is a trial upon an issue of fact.   (Code Civ. Proc., secs. 590, 1823, 1827.)   Any qualified rights in navigable water held under grant from the state

are subject to the right of the state to protect navigation; and the state cannot part with rights which are held in trust for the public. ˙ (Const., art. XV, secs. 1, 2; *Heckman v. Swett*, 99 Cal. 309, 310; *Illinois Cent. R. R. Co. v. Illinois*, 146 U. S. 452–56; Gould on Waters, sec. 32.) There is no misjoinder of causes of action. It is the great object of courts of equity to put an end to litigation, and to settle the rights of all persons interested in or affected by the subject matter of the controversy. (*Reynolds v. Lincoln*, 71 Cal. 187.) Different modes of relief do not make different causes of action. (Bliss on Code Pleading, sec. 114.) It was not necessary that the complaint should define what portion of the lands described in the complaint any defendant claims nor the interest that he claims. (*Castro v. Barry*, 79 Cal. 443.) The state alone has the right to complain of any trespass upon its rights. (*San Pedro v. Southern Pac. R. R. Co.*, 101 Cal. 337.)

A. A. Moore, J. C. Martin, William F. Herrin, and H. S. Brown, for Oakland Water Front Company, Railroad Companies, and Pacific Improvement Company, Respondents.

The court properly took judicial notice of the statutes taking title out of the state. The court may, upon demurrer, take judicial notice of facts not averred, which are established by law. (*Cole v. Segraves*, 88 Cal. 103; *Faekler v. Wright*, 86 Cal. 210; *Rogers v. Cady*, 104 Cal. 288; 43 Am. St. Rep. 100; *Chapman v. Wilber*, 6 Hill, 475; *De Baker v. Railway Co.*, 106 Cal. 257; 46 Am. St. Rep. 237.) The state cannot complain of improvements made within the limits of the grant from the state to the city of Oakland. (*Attorney General v. Utica Ins. Co.*, 2 Johns. Ch. 381–3.)

James A. Johnson, William R. Davis, W. Lair Hill, E. J. Pringle, and H. A. Powell, for City of Oakland, Respondent.

The legislature had the right to make the cession to the town of Oakland made by the incorporating act of May 4, 1852. (*San Pedro v. Southern Pac. R. R. Co.*, 101 Cal. 337.) The city of Oakland is the successor of the town under the act of March 25, 1854. (*Oakland v. Carpentier*, 13 Cal. 540; 21 Cal. 642; *San Francisco etc. R. R. Co. v. Oakland*, 43 Cal. 504, 505.) The state

has recognized the right of the city of Oakland to control the harbor and wharves erected therein.  (Stats. 1854, p. 183; Stats. 1860, p. 67; Stats. 1861, p. 384; Stats. 1862, pp. 337–55; Stats. 1867–68, p. 501; Stats. 1870, p. 693; Stats. 1875–76, p. 567; Freeholder Charter, Stats. 1889.)  A fact of which the court takes judicial notice is as much part of the pleadings as if it had been averred.  (*Branham v. Mayor etc.*, 24 Cal. 602.)  The courts take judicial notice of whatever is established by law.  (Code Civ. Proc., sec. 1875; *People v. Smith*, 1 Cal. 9; *Irwin v. Phillips*, 5 Cal. 140; 63 Am. Dec. 113; *Ede v. Johnson*, 15 Cal. 53; *Payne etc. v. Treadwell*, 16 Cal. 220; *People v. Potter*, 35 Cal. 110; *People v. Hagar*, 52 Cal. 188.)

William & George Leviston, for Edson F. Adams, John C. Adams, Hannah J. Adams, Julia P. A. Prather, California Development Company, Horace W. Carpentier, and E. C. Sessions, Respondents.

The attorney general was not the proper officer to begin this action.  (Pol. Code, secs. 443, subd. 16, 470.)  There is a misjoinder of parties defendant and of causes of action.  (Code Civ. Proc., sec. 427.)  The court properly took judicial notice that the state had parted with its interest in the subject matter of the action.  (Code Civ. Proc., sec. 1875; *Cole v. Segraves*, 88 Cal. 105; *Ex parte Kearney*, 55 Cal. 221; *People v. Hagar*, 52 Cal. 188; *Whiting v. Townsend*, 57 Cal. 515; *Faekler v. Wright*, 86 Cal. 210.)

George M. Shaw, for T. W. Badger, Respondent.

Courts take judicial notice at any stage of an action or proceeding, without averment or proof.  (Code Civ. Proc., sec. 1875; 12 Am. & Eng. Ency. of Law, 151, 159, note 2; Bliss on Code Pleading, sec. 177; Stephen's Pleading, 345, 353, 354; *Wilhoit v. Cunningham*, 87 Cal. 458; *Kraner v. Halsey*, 82 Cal. 210; *Brown v. Anderson*, 77 Cal. 236; *Belcher etc. Co. v. Deferrari*, 62 Cal. 162; *Staude v. Election Commrs.*, 61 Cal. 313; *People v. Hagar*, 52 Cal. 188; *Talbert v. Hopper*, 42 Cal. 397; *People v. Robinson*, 17 Cal. 371.)  The state had the authority to make the grant to the city of Oakland.  (*Shively v. Bowlby*, 152 U. S. 1; *Taylor v. Underhill*, 40 Cal. 473; *Kimball v. Macpherson*, 46 Cal. 104;

*Upham v. Hoskings,* 62 Cal. 250; *Northern Ry. Co. v. Jordan,* 87 Cal. 23; *Weber v. Harbor Commrs.,* 18 Wall. 65, 66.)

Mich. Mullany, for H. N. Dalton, Respondent.

The legislative grant to the city of Oakland was for a public use, and was valid; and the authority of the city as a public trustee has never been revoked by the legislature. (*Illinois Cent. R. R. Co. v. Illinois,* 146 U. S. 387; *Pollard v. Hagan,* 3 How. 212; *Shively v. Bowlby,* 152 U. S. 1; *San Francisco v. Itsell,* 80 Cal. 59; *People v. Holladay,* 93 Cal. 243; 27 Am. St. Rep. 186.)

BEATTY, C. J.—This is an action to determine adverse claims to real property, and for other incidental relief, instituted by the attorney general in the name and on behalf of the people of the state. All the defendants who are contesting the claims of the state demurred to the first amended complaint upon the general ground that it failed to state a cause of action, and a few of them demurred specially upon various other grounds. These demurrers were sustained by the superior court upon the sole ground, as appears by the terms of its order, that the said amended complaint did not state facts sufficient to constitute a cause of action. And the judge of said court being of the opinion that the defect could not be cured by amendment, leave to file a second amended complaint was denied, and judgment ordered to be entered for defendants. From the judgment entered in pursuance of said order this appeal is prosecuted.

Such being the case, the principal questions to be determined relate to the right of the plaintiff to any relief upon the facts admitted by the demurrer. There is, however, a preliminary question, jurisdictional in its nature, which must first be disposed of.

It is contended on behalf of several of the defendants that the attorney general had no authority to institute the action, and that the judgment of the superior court should be affirmed for that reason alone. No motion to dismiss the action upon this ground was made in the superior court, but it is contended that the objection is raised by those of the demurrers which specify, among other grounds, want of capacity in the plaintiff to sue. It seems very clear that this objection does not come under that

head, and doubtful if it comes within any of the grounds of demurrer mentioned in the Code of Civil Procedure. (Code Civ. Proc., sec. 430.) The proper practice would seem to be that followed in *People v. Stratton,* 25 Cal. 242, where the defendant moved in the district court to dismiss the information upon the ground, among others, that the attorney general had no authority or power to institute or prosecute the proceedings in the name or on behalf of the people of the state.

But notwithstanding the failure of the defendants to raise this objection in the regular way, we consider it necessary to decide it for the reason that it is, as above stated, jurisdictional in its nature. Whatever authority the attorney general has to institute such a proceeding must be derived from the constitution and laws of the state, and if he has no authority we are bound to take judicial notice of the fact. Such seems to have been the view of our predecessors in the case of *People v. Stratton, supra,* for although they finally decided that the information there in question was fatally defective for want of facts—a conclusion which would necessarily have resulted in an affirmance of the judgment of the district court—they nevertheless deemed it necessary to determine in the first place whether the district court had erred in dismissing the information upon the ground that the attorney general had no authority to file it. They felt obliged, that is to say, before determining the merits of the controversy, to ascertain whether it was properly before them for decision.

And so here, the matter having been brought to our attention, however irregularly, we feel obliged to dispose of the objection *in limine.* Precisely the same question that confronts us was necessarily involved in *People v. Stratton, supra.* The provisions of the constitution and laws defining the nature of the office and prescribing the duties of the attorney general were substantially the same then as now. It was conceded by the supreme court that the solution of the question as to his authority to file an information for the purpose of annulling a state patent was difficult; but they concluded that by analogy to the powers exercised by the same officer in England and in most, if not all, the states of the American Union, he could do so in a case directly involving the rights and interests of the state. Ever since the date of

that decision (1864), under the present constitution as well as under the old one, the attorney general has continued to file informations in the name of and on behalf of the people of the state in cases involving directly their rights and interests, and that without any new authority expressly conferred by law. In one or two of these cases his authority to institute the proceedings has been directly assailed, and expressly affirmed by the court. (*People v. Gold Run etc. Co.,* 66 Cal. 138; 56 Am. Rep. 80; *People v. Beaudry,* 91 Cal. 220.) In numerous other cases cited in *People v. Beaudry, supra,* his authority was unchallenged. In view of these decisions and this long course of practice, we think it is now too late to question the authority of the attorney general to institute an action in a case in which the rights and interests of the people of the state are directly involved, as they undoubtedly are in the case stated in this bill.

Having thus reached the conclusion that the matters in controversy are properly before us for decision, it becomes necessary to state with some particularity what the case is, as made by the amended complaint.

After the usual and formal allegations as to the names and descriptions of the numerous persons, natural and corporate, who are made defendants in the action, the plaintiff proceeds to allege the admission of California as one of the states of the Union, its boundaries as defined by the constitution and act of admission, the fact that said boundaries embrace the bay of San Francisco, and all its arms, including the creek or estuary of San Antonio, and "that upon the admission of said state into the Union, as above stated, it acquired, and now continues to retain, as well the jurisdiction over as the soil of the beds of the said bay, including said San Antonio creek, and the right, title, power, and authority in, to, and over the same, absolutely and completely, subject only to the right of the United States to supervision over the navigable waters of said bay, and the arms of said bay, so far as may be necessary in exercising its right to regulate commerce with foreign nations and among the several states; that thus possessing the sovereign power over, and proprietorship of, the said bay of San Francisco and said San Antonio creek, and the beds thereof, said state has the right to protect and defend the same from encroachment, and to sue for relief in respect of

any encroachment or infringement of its sovereign or proprietary rights therein; that the lands hereinafter described, and which are situated in the county of Alameda and state of California, are portions of the beds of said bay of San Francisco, and of said San Antonio creek; and all of said lands, at the time said state was thus admitted into the Union, were situated and lying, and continue to be situated and lying, below the line of ordinary high tide, said lands being described as follows, to wit: All the land within the limits and boundaries of the said city of Oakland and city of Alameda, and lying and situated between high tide of the waters of said bay of San Francisco and of said San Antonio creek and ship channel in said bay of San Francisco and in said San Antonio creek as it existed on September 9, 1850, and more particularly described as follows, to wit." The description which follows is of a boundary traced partly along the exterior lines of certain land patents from the United States to Domingo, Vicente, and Antonio Peralta, where said lines meander the shores of the bay of San Francisco and the estuary of San Antonio, partly along what is called ship channel in the bay of San Francisco, and partly along the northeastern boundary of the city of Oakland, as defined in the original act of incorporation passed in 1854.   It would not be easy, and is, perhaps, impossible, to determine from the face of the complaint precisely what territory this description embraces, although it is aided to some extent by what follows, to the effect that "said lands are. situated in that part of said bay of San Francisco which, together with said San Antonio creek, constitutes the harbor of the city of Oakland and the city of Alameda, in said county of Alameda; that said city of Oakland is situated upon that part of said bay which includes said lands and upon said San Antonio creek; that said lands, at the time said state was thus admitted into the Union, extended and now continue to extend (except so far as portions of said lands have been filled, the extent of which is to plaintiff unknown) to a considerable distance under the navigable waters of said bay and of said San Antonio creek and to ship channel in said navigable waters, and to a depth in said navigable waters at ordinary low tide of, to wit, twenty-four feet; that a large portion of said lands are, and always have been, constantly covered by said waters, and that the residue of said lands are, and at all times have been, covered

by said navigable waters at ordinary high tide, except so far as they have been filled." The remaining allegations of the complaint are not material to the principal point to be decided, but it may be useful to epitomize them briefly in order to indicate the general features of the case and the nature of the relief which the plaintiff is seeking.

It is alleged that San Antonio creek is and always has been navigable, that the federal government has expended, and continues to expend, large sums of money in its improvement, and in the improvement of the bay as a harbor for the populous and growing cities of Oakland and Alameda, which front upon the tidal and navigable waters of said bay and estuary, and that the lands described in the complaint embrace all the waterfront of said cities, at which vessels can land, and all that can be made available for that purpose, and all the lands and shores upon which landings, wharves, docks, or piers, or other structures for landing, loading, or unloading of vessels at said cities, can be constructed or maintained; "that a large portion of said waterfront and of said lands is now required for the erection and maintenance of wharves, docks, and piers and other structures for the use of vessels landing at said cities, in receiving and discharging cargoes, and the necessity for the use of additional portions of said shores and lands, for the purposes aforesaid, will be constantly on the increase until the whole thereof will be required for such use.

"That other large portions of said lands and shores are and will be required for the termini of railroads of companies now and hereafter seeking to enter said city of Oakland and said city of Alameda, and to obtain access to said navigable waters for the purpose of connecting with vessels navigating said waters, and bringing car and ship together."

Other allegations follow showing the relative situation of the city of San Francisco to the bay and estuary, the size and importance of the harbor for purposes of domestic and foreign commerce, and the fact that all commodities transported between San Francisco and the eastern states, and other parts of the state of California, by land carriage must pass over the lands and water front in controversy.

It is next alleged that the defendants claim estates and interests and absolute title in and to all the aforesaid land and waterfront adverse to the plaintiff, and claim adversely to the plaintiff absolute control of the same, and the right to control and prevent the landing of vessels at the waterfront of Oakland and Alameda, and the right to prevent the construction of wharves, docks, piers, etc; that under said claim the defendants have driven piles along the waterfront below the line of low tide, and have erected various structures upon the waterfront which obstruct the public right of navigation, and constitute public nuisances and purprestures; that on the wharves and piers which they have unlawfully erected many of the defendants have charged and received pay for the privilege of using them; that the Oakland Water Front Company, in conjunction with other of the defendants, has actually proceeded to fence in a portion of the open harbor in the bay, by driving lines of piles in the deep water for the purpose of securing a monopoly of the enclosed space, etc. Wherefore judgment is prayed that the defendants may be required to set forth the nature of their several claims, and that they be adjudged invalid; that the title of the state and its right to control and develop said harbor and waterfront be established; that the structures erected by defendants thereon be ordered removed, or declared subject to the control of the state, and that the defendants and each of them be enjoined from having any control over any part or portion of said waterfront including the wharves and buildings thereon, and from making any charges for toll, dockage, or wharfage for the use thereof. There is also a prayer for a temporary and permanent injunction against the Oakland Water Front Company, and the defendants acting in conjunction therewith, restraining them from driving piles or otherwise inclosing or obstructing the open waterfront.

That this complaint, considered by itself, states a cause of action is a proposition that does not admit of doubt, and the ruling of the superior court sustaining the general demurrer was not rested upon the ground that its allegations were in themselves insufficient to entitle the plaintiff to any relief. But it was held that in dealing with the general demurrer the court not only could, but was bound to, take judicial notice of certain public

statutes of the state of California, the provisions of which were held to be so inconsistent with essential allegations of the complaint as to render it legally impossible to treat them as admitted or true.

The particular statutes which the court considered in this connection were: 1. The act of May 4, 1852, entitled "An act to incorporate the town of Oakland, and to provide for the construction of wharves thereat" (Stats. 1852, p. 180); 2. The act of March 25, 1854, entitled "An act to incorporate the city of Oakland" (Stats. 1854, p. 183); and 3. Various subsequent acts amending and supplementing the act last cited.

By the first of these acts the boundaries of the town of Oakland were defined, and it was incorporated subject to the provisions of a general act relating to town corporations previously passed. Some special powers were also conferred upon the municipal authorities, "and with a view to facilitate the construction of wharves and other improvements the lands lying within the limits aforesaid [the corporate boundaries], between high tide and ship channel," were "granted and released to said town."

By the second of said acts the town of Oakland, without alteration of its boundaries, was reincorporated as the city of Oakland, with enlarged municipal powers and privileges, and all the rights and privileges of the former town devolved upon the new city. By the subsequent acts the charter of the city was amended in various particulars, and its boundaries altered and enlarged.

The superior court, taking cognizance of these acts, held that the original grant to the town of Oakland embraced the identical land described in the complaint, and all of it; that the title thereto had never revested in the state, and could not by any legal possibility have done so, in the absence of a law revoking the gift, and, consequently, that the allegation in the complaint of ownership by the state could not be true, and could not be treated as true in ruling upon the demurrer.

It is contended on the part of the appellant that the superior court erred in holding that it could look beyond the face of the complaint in ruling upon the demurrer; that the doctrine of judicial notice is only a rule of evidence, and cannot be applied to the construction of a pleading; that a demurrer admits the truth of every fact that is well pleaded, and that a fact may be

well pleaded notwithstanding the existence of a valid law establishing conclusively the direct reverse of the matter alleged.

We do not think that these propositions are sustainable either upon reason or authority. The allegation of a sound conclusion of law is always regarded as superfluous in pleading, and the allegation of an unsound conclusion is entirely disregarded. This is undeniably true with respect to laws establishing general rules of right or obligation, and there is no reason why it should not be held equally true in respect to a law which merely determines the status of a particular thing. Why should a general demurrer to a complaint be overruled and the parties required to proceed to the trial of an issue of fact when the court, looking to a law of which it is bound to take notice, can clearly see that one of the essential allegations of the complaint can never by any legal possibility be proved? What useful or desirable end could be attained by shutting its eyes to the certain event of the litigation and putting the parties to the trouble, delay, and expense of framing and preparing to try issues which can have no influence upon the final result? These questions answer themselves and make it entirely clear that there are no considerations of expediency or convenience to support the contention of appellant. It is also opposed to the authority of more than one decision of this court. The object and purpose of most laws is to establish general rules governing the conduct of those who are subject to the jurisdiction of the state, but there are many laws of a different character—such, for instance, as laws defining county and municipal boundaries or making grants from the public domain. Laws of this class establish facts and the *status* of particular places and things, just as conclusively as laws of the other class establish rules of conduct, and the courts are as much bound to observe and enforce the one as the other at all times and at all stages of any judicial proceeding. A legislative grant from the public domain is not only a grant but is also a law, and if a case is such that a grant being once made the title can never revest in the state except by a legislative revocation of the grant, and there has been no such revocation, the courts of the state must take notice at all times that the grantee or his successor is, and that the state is not, the owner of the thing granted.

In the case of *Cole v. Segraves*, 88 Cal. 104, the jurisdiction of the court depended upon the fact, not directly alleged, that the demanded premises were situated in Lassen county, but it was alleged that they were situated in the town of Susanville, and the complaint was held sufficient because the court could take judicial notice of the fact that Susanville was the county seat of Lassen county.

In *Faekler v. Wright*, 86 Cal. 210, the question was again one of jurisdiction arising on the pleadings, and it was held, in sustaining the jurisdiction, that the court must take judicial notice that land described by reference to the public surveys was in the county where the action to foreclose a mortgage was commenced.

In *Rogers v. Cady*, 104 Cal. 290, 43 Am. St. Rep. 100, the same rule was applied in the construction of a judgment. In *De Baker v. Southern Cal. Ry. Co.*, 106 Cal. 257, 46 Am. St. Rep. 237, the court took judicial notice of the same class of facts in order to supply the omission of any direct allegation of essential matters.

The highest courts of other states have followed the same rule in the cases cited in the briefs of counsel, to which we deem it unnecessary to make more particular reference.

Possibly it may be objected that the decisions above cited are inapplicable to the present case because the court has here ignored a fact alleged, while in the other instances all that was done was to supply a fact not alleged. But clearly the same principle governs both cases, and an exact precedent for the course here pursued is found in the case of *Mullen v. State*, 114 Cal. 581. (And see, also, *Chapman v. Wilber*, 6 Hill, 475.) Our conclusion on this point is that the superior court did not err in holding that it must take judicial notice of the legislative grant to Oakland in ruling upon the demurrers.

But, while we are entirely satisfied that the superior court adopted a correct principle of decision, we think it erred in the application of it. For taking the description of the grant to the town of Oakland contained in the act of 1852, and comparing it with the land described in this complaint, it cannot be seen that the land here claimed by the state is all embraced within the grant to Oakland. The terms of the two descriptions are in

many particulars utterly dissimilar, and where the same terms are employed, they are not always employed in the same sense. The complaint, for instance, in describing the bay front of the tract claimed, uses the term "ship channel" as the equivalent of the line of twenty-four feet depth of water at low tide; whereas the words "ship channel," as used in the act of the legislature to describe the bay front of the town and grant, do not necessarily imply a line conforming to that depth of water at any stage of the tide. The two descriptions cannot, therefore, be laid one upon the other so as to demonstrate an exact coincidence of boundaries, nor can it be made to appear that either tract is entirely contained within the other. On the contrary, it appears from the complaint that the defendants are claiming the submerged lands of the bay front out to a depth of twenty-four feet at low tide, whereas it cannot be legally implied from the term "ship channel," as used in the act of the legislature, that the state has ever made a grant extending to that line. And if this serious discrepancy of boundaries appears on the face of the complaint as to one side of the tract in controversy, it may be that other discrepancies even more serious will be disclosed by the evidence when the issue comes to be tried. In point of fact we know from the evidence in another case which was argued and submitted together with this case (*Oakland v. Oakland Water Front Co.*, ante p. 160) that the description in this complaint embraces the eastern basin of the estuary, sometimes called the Brooklyn basin, and in the same way we know that the legislative grant to Oakland did not include Brooklyn basin. This point, of course, cannot be decided in this case, because the evidence relating to these boundaries is not in this record, and it is only mentioned by way of illustration to show more clearly that the ground upon which the general demurrers were sustained is untenable.

Another point to be noticed in this connection is, that the state has, by some of its more recent legislation, contracted the southern boundary of Oakland so as to exclude from its limits the southern half of the estuary, and this amounts to a renunciation on the part of the city and resumption by the state of the control of so much of the grant as may have been covered by this excluded portion of the city.

It is but fair to the judge of the superior court to say that the ground upon which his decision is here overruled does not appear to have been relied upon by the state at the time the demurrers were submitted. At that time there seems to have been a general acquiescence in the view that the premises in controversy were wholly embraced in the grant to the town of Oakland, and the position assumed by the attorney general was, 1. That the grant was void; 2. That if not void it had been forfeited by the failure of the town and its successors, the city of Oakland, to perform its conditions; and 3. That, even conceding its present validity, the state could maintain an action to abate, as a public nuisance, any obstruction of the navigable waters included within the boundaries of the grant.

All of these propositions are here reasserted, but it is not necessary to decide any of them in order to dispose of this appeal.

As to the first proposition, it is involved in the case of *Oakland v. Oakland Water Front Co.*, above referred to, where it is more fully discussed by counsel, and must be carefully considered. As to the second proposition, it is to be observed that, if the grant to the town of Oakland was burdened with any conditions, they were conditions subsequent and not conditions precedent, and even conceding that the attorney general, without any action by the legislature, may proceed to enforce a forfeiture of a legislative grant for breach of a condition subsequent, the allegations of this bill are not framed to support that sort of an action.

As to the third point, it is undoubtedly true that a grant of the soil under navigable waters carries with it no right to obstruct navigation, and that the state may enjoin its grantee or his successors from erecting or maintaining structures which will impair or interfere with the exercise of the public right, if the interference is of a character that constitutes it a public nuisance. But regarding this proceeding as an action to abate nuisances, the complaint is demurrable on the ground of misjoinder of causes of action and parties defendant, as was intimated by the judge of the superior court. Each of the several defendants seems to be acting independently of the others in the erection and maintenance of the separate structures which are alleged to be obstructions to the navigation of the bay and estuary, and if so, although

each may be liable in a separate action, these different causes of action cannot be united in the same suit.

For the reasons above stated, the judgment of the superior court is reversed and the cause remanded, with leave to the plaintiff to amend its complaint as it may be advised.

Van Fleet, J., Henshaw, J., Temple, J., Harrison, J., and Garoutte, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of reversal upon the ground that it does not clearly appear that the grant to the town of Oakland includes all the land described in the complaint in this action. The description in the complaint of the premises intended to be covered by the action is somewhat difficult to follow, and I cannot see that it does not embrace some land to the southward, not included in the grant to Oakland. This point, in justice to the respondents and the court below, should have been made in the latter court; but I do not see how the attorney general can be prevented from taking any position here from which he can defend the sufficiency of the complaint. I fully concur in the view expressed in the opinion of the chief justice, that the court below properly considered the said grant to the town of Oakland.