[L. A. No. 6020. In Bank.—February 3, 1921.]

# E. V. CHAVEZ, Appellant, v. TIMES-MIRROR COMPANY (a Corporation), Respondent.

[1] LIBEL—TRUTH OF CHARGE—COMPLETE DEFENSE.—In a civil action for damages for libel the truth of the charge is a complete defense.

[2] PLEADING—CONSIDERATION OF SUFFICIENCY—JUDICIAL NOTICE.—In the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary.

[3] LIBEL—PLEADING—JUDGES OF SUPERIOR COURT—JUDICIAL NOTICE.—In an action by an attorney at law for libel founded on the publication of a newspaper article declaring that the statement contained on circulated postcards bearing the signature of the plaintiff recommending certain judges of the superior court for re-election was a deliberate lie, maliciously framed, as to the one of the persons named, who was not a judge but the public defender, the trial court, in considering the demurrer to the complaint, was required to take into consideration the fact that such person was not a judge, and therefore not a candidate for re-election, and that the statement on the card was, in such respect, untrue.

[4] ID.—STATEMENT OF PLAINTIFF CONCERNING RE-ELECTION OF JUDGES—KNOWLEDGE OF UNTRUTH RESPECTING ONE PERSON—NONASSUMPTION BY COURTS.—In such an action, in the absence of any showing in the complaint of knowledge on the part of the plaintiff of the untruth of the statement on the card as to the person named as a judge, who was not one in fact, the courts are not at liberty in considering the sufficiency of the complaint to assume that he had such knowledge, even though he was a practicing attorney in the county.

[5] EVIDENCE—JUDICIAL NOTICE—RULE INAPPLICABLE TO PERSONS.—The rule of judicial notice has no application to persons, but it is a rule of evidence for the government of courts, and a person cannot be held to have knowledge of all those things of which a court may take judicial notice, in many cases by resort to appropriate books or documents of reference, simply because they are matters of which courts take judicial notice.

---

1. Truth as a defense to libel and slander, notes, 17 Ann. Cas. 761; Ann. Cas. 1918C, 335, 1088; 21 L. R. A. 502; 31 L. R. A. (N. S.) 132; 50 L. R. A. (N. S.) 1040.

[6] LIBEL—USE OF INNUENDOES.—One cannot by an allegation by way of innuendo ascribe to an alleged libel a meaning of which it is not fairly susceptible in the light of such extrinsic facts as are alleged.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

E. V. Chavez and J. W. Satterwhite for Appellant.

Samuel Poorman, Jr., Otis H. Castle and Hunsaker, Britt & Edwards for Respondent.

ANGELLOTTI, C. J.—This is an appeal by plaintiff from a judgment in favor of the defendant in an action for libel, given on sustaining a demurrer to his complaint without leave to amend. The action was founded on a publication in the "Los Angeles Times." The demurrer was both general and special.

Counsel have devoted themselves almost exclusively to the general demurrer for want of facts sufficient to constitute a cause of action, the claim of respondent in this regard being in brief that, in view of certain matters of which it is said the court must take judicial notice, the complaint shows that the published article was in all substantial respects true. [1] As the truth of the charge is a complete defense in a civil action for damages for libel, it is plain that if the complaint itself shows the truth of the charge, the demurrer was properly sustained. Whether or not it does so show is the principal question on this appeal. The complaint alleges that plaintiff is, and has been for more than eleven years, an attorney at law, engaged in the practice of his profession principally in the county of Los Angeles, and that he always, prior to the publication complained of, enjoyed a good name and reputation as an attorney. It further alleges that defendant is the owner and publisher of the daily newspaper known as the "Los Angeles Times," a paper of wide circulation in Los Angeles County and elsewhere. It then alleges that on September 29, 1918, said defendant wrongfully and maliciously, and with intent to injure plaintiff, published in said newspaper "of and concerning him, in

his said capacity and profession and as a man, the following false, libelous, malicious, and defamatory article, to wit:

"It has been said that everything is fair in war, but even that statement is open to criticism. For instance, nobody but a Fritz would ever excuse the Kaiser for his atrocities in Belgium or for other innumerable fiendish acts. With this prelude, I want to say that neither is everything fair in politics. During the past few weeks postcards have been circulated within the city and county bearing the signature of one E. V. Chavez. The card is addressed to 'Dear friend,' and says:

" 'As a member of the local bar and a practitioner before the Superior Courts of this county, I take great pleasure in recommending the following judges for re-election to the positions which they are now so creditably occupying: to wit, Judge James C. Rives, Judge Frederick Houser, Judge Charles Wellborn, Judge John M. York, Judge Paul McCormick, Judge L. H. Valentine, *Judge* Walton J. Wood.'

"Obviously this card was written and mailed for the purpose of helping the candidacy of Walton J. Wood. The statement on the card is a deliberate lie, maliciously framed, and deserves the bitterest condemnation. The incumbent judges named (without their permission) have reason to be sore and no doubt are. It seems to me that this instance furnishes good material for the investigating committee of the Bar Association. Walton J. Wood is the public defender. He is not a judge and if all of his supporters are of the kind that evidently sent out this reprehensible document I pity him. As a public defender he has made a clear record and he should be the first one to expose this sort of fake advertising."

This is followed in paragraph V by the innuendoes, being certain allegations as to the meaning intended by defendant as to four portions of the article, comprising all thereof except the statement on the card, and the understanding of the meaning of those portions on the part of the persons who read the article. Then comes paragraph VI, alleging "that said publication was false and defamatory," and that by means thereof plaintiff has been and is greatly injured and prejudiced in his reputation and business, and has suffered great humiliation and anguish of mind. He alleged his actual

damage as being five thousand dollars, and also asked for twenty thousand dollars, exemplary or punitive damage.

The statement on the card alleged in the article to have been circulated necessarily implied that "Judge Walton J. Wood" was, with the other judges named, an incumbent judge of the superior court of Los Angeles County, and, with such others, a candidate for re-election to the position which he and such others then occupied "so creditably." [2] There is apparently no dissent from the proposition that in the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary. (See *People* v. *Oakland Water Front Co.*, 118 Cal. 234, 244–246, [50 Pac. 305]; *French* v. *Senate*, 146 Cal. 604, 607, [2 Ann. Cas. 756, 69 L. R. A. 556, 80 Pac. 1031]; 12 Ency. Pl. & Pr. 1; 1 Abbott's Trial Brief, 2d ed., p. 107.) [3] In view of this rule it must be conceded that the superior court in considering the demurrer was required to take into consideration the fact that Walton J. Wood was not a judge of the superior court, and that one J. Perry Wood was such a judge (subd. 5, sec. 1875, Code Civ. Proc.; 15 R. C. L. 1105; *San Joaquin Co.* v. *Budd*, 96 Cal. 47, [30 Pac. 967]; *People* v. *Knoblock*, 11 Cal. App. 333, 335, [104 Pac. 1012]), that said Walton J. Wood was therefore not a candidate for "re-election," and that the statement on the card was, in this respect, untrue. It is upon this fact that learned counsel for the defendant base their claim that the published article contained nothing but the truth, and fair comment thereon.

But the published article goes further, declaring that "obviously this card was written and mailed for the purpose of helping the candidacy of Walton J. Wood," and that "the statement on the card *is a deliberate lie, maliciously framed,*" deserving the bitterest condemnation. If the statement as to Walton J. Wood was intentionally and deliberately made by plaintiff with knowledge of its falsity, as this necessarily implies, the remainder of the published article would, in our opinion, be fully justified as fair and legitimate comment on a most reprehensible act, fully meriting all that is said in the article about it and about the person guilty thereof. In such event it could have been made only for the purpose of help-

ing the candidacy of Walton J. Wood by misleading the electors as to the facts.

The real sting of the published article lies in the statement that the plaintiff had thus circulated "a deliberate lie, maliciously framed," necessarily implying full knowledge on the part of the plaintiff of the untruth of the statement on the card as to Walton J. Wood, and a deliberate expression thereof with such knowledge. [4] The complaint, however, does not show any such knowledge on the part of plaintiff, and courts are not at liberty in considering the sufficiency of a pleading to assume that he had such knowledge, even though he was an attorney at law practicing in Los Angeles County. [5] The rule of judicial notice has no application to persons. It is a rule of evidence for the government of courts (*Raggio* v. *Southern Pacific Co. et al.,* 181 Cal. 472, [185 Pac. 171]), and a person cannot be held to have knowledge of all those things of which a court may take judicial notice, in many cases by resort to appropriate books or documents of reference, simply because they are matters of which courts take judicial notice. While it seems extremely probable that plaintiff in fact did know that Walton J. Wood was not a judge and not a candidate for reelection, it is possible that he did not, and in the face of the allegation in the complaint "that said publication was false and defamatory," which must be taken as meaning that the *whole* article was false and defamatory (*Leonard* v. *McPherson,* 146 Cal. 616, 620, [80 Pac. 1084]), a court cannot on demurrer assume that he knew, and that the statement on the card was "a deliberate lie, maliciously framed." The difference in effect between a charge of uttering and circulating a mere untruth, perhaps in entire ignorance of the fact that the statement is untrue, or because of inadvertence, etc., and a charge of uttering and circulating "a deliberate lie, maliciously framed," for an improper purpose, is too obvious to merit discussion. In this respect the complaint does not show the truth of the published article, and it does sufficiently state a cause of action.

Whatever may be said as to a certain statement in one of the innuendoes constituting an admission that plaintiff sent out and circulated the postal cards, the same cannot by any possibility be construed as an admission that the

statement thereon with reference to Walton J. Wood was
"a deliberate lie, maliciously framed."

Nor is the allegation of falsity of the published article
in any way limited in its effect by anything contained in the
innuendoes.   The allegation of falsity goes to the whole
article.   In view of what we have said, the words actually
used in the article are actionable entirely regardless of the
innuendoes, by which it was sought to enlarge and extend
the sense of those words.

In view of possible future proceedings, we deem it proper
to say, in so far as the innuendoes are concerned, that for
the most part the meaning ascribed thereby to the words
used in the article is one of which the words are incapable,
and that for the remaining part the words used are only
fair comment upon the matter discussed.   **[6]**   It is a well-
settled rule that one cannot by such an allegation ascribe
to an alleged libel a meaning of which it is not fairly
susceptible in the light of such extrinsic facts as are al-
leged.  (See *Mellen* v. *Times-Mirror Co.*, 167 Cal. 587,
[Ann. Cas. 1915C, 766, 140 Pac. 277].)   In this case
the allegations to the effect that the defendant by the in-
troductory part of the article meant to say and was under-
stood to mean that plaintiff was as cruel, treacherous, dis-
honorable, double-dealing, despicable, and inhuman as the
Kaiser, etc., finds no support in the language of the article,
alone or when considered in the light of the extrinsic facts.
The language used is utterly incapable of any such mean-
ing.   The same is true as to the allegation that by other
language used defendant meant to say and was understood
as meaning that plaintiff had entered into a conspiracy or
agreement with Walton J. Wood to help elect him by unlaw-
ful and corrupt means.   So with the allegation that by the
words, "It seems to me that this instance furnishes good
material for the investigating committee of the Bar Associa-
tion," defendant meant to say and was understood as mean-
ing "that plaintiff is so unworthy, unprofessional, and cor-
rupt, . . . that he should be humiliated and disgraced by
having the Bar Association of the state of California . . .
suspend him . . . from practicing his said profession."   It
may properly be added that the language actually used would
seem to be only fair comment on such conduct as was at-
tributed to plaintiff by the article.   The portion sought to
be construed in the fourth innuendo is clear and explicit in

meaning and constitutes nothing but fair comment, as also does the statement that "the incumbent judges named (without their permission) have reason to be sore and no doubt are." In short, the innuendoes alleged do not assist the pleading, and if without them the language of the article was not actionable, in view of the allegations of special damage, the complaint would not state facts sufficient to constitute a cause of action. But, as we have seen, the complaint is sufficient without them.

The judgment is reversed, with direction to the superior court to overrule the demurrer, with leave to defendant to answer.

Shaw, J., Wilbur, J., Sloane, J., Olney, J., Lawlor, J., and Lennon, J., concurred.