Day, J.
 

 The question raised by the demurrer is whether the amended petition shows on its face that a clear, legal duty reposes upon respondent, William S. Evatt, the Director of Finance, to make the certification prayed for.
 

 The amended petition alleges that “on December 29, 1938, and at all times herein mentioned since that date there was and is now an unexpended balance of appropriated funds in the maintenance and repair fund
 
 *59
 
 of the Department of Highways, unencumbered by precedent obligations sufficient in amount that the respondent, William S. Evatt, could and should make the certification as required of him by law.”
 

 Relator contends that “respondents’ demurrer admits the relator’s allegation in the amended petition that there was and is an unexpended balance in the maintenance and repair fund of the Department of Highways unencumbered by precedent obligations sufficient in amount to meet the relator’s purchase orders executed on December 29, 1938.”
 

 While it is true that a demurrer admits allegations of fact well pleaded, it is likewise true that it does not admit facts the direct reverse of which may be judicially noticed. Phillips on Code Pleading, 335, Section 341.
 

 In disposing of a demurrer, a court may invoke the doctrine of judieiál notice even to the extent of noticing facts contrary to those alleged in the pleading demurred to
 
 (People
 
 v.
 
 Oakland Water Front Co.,
 
 118 Cal., 234, 50 P., 305), and matters, judicially noticed may be read into the pleading as fully as if they were stated therein.
 

 It is fundamental that courts are bound to take judicial notice of the public laws of their own state. Since an appropriation by the General Assembly can be made only by public law, judicial notice must be taken of appropriation acts passed by the General Assembly.
 

 The General Appropriation Act for the years 1937 and 1938, known as Amended Senate Bill No. 369, passed by the 92nd General Assembly, and signed by the Governor on July 19, 1937, provides, in Section 1, paragraph 3, that:
 

 “The sums herein named in the column designated ‘1937’ shall not be expended to pay liabilities or deficiencies existing prior to January 1, 1937, nor to pay liabilities incurred subsequent to December 31, 1938;
 
 *60
 
 those named in the column designated ‘1938’ shall not be expended to pay liabilities or deficiencies existing prior to January 1, 1938, or incurred subsequent to December 31, 1938.”
 

 In Section 3, paragraph 4, of the act, it is provided:
 

 “The appropriations made in this act shall be and remain in full force and effect for a period of two years commencing with the dates on which such appropriations shall take effect, for the purpose of drawing money from the state treasury in payment of liabilities lawfully incurred hereunder, and at the expiration of such period of two years, and not before, the monies hereby appropriated shall lapse into the funds from which they are hereby severally appropriated.”
 

 It will be noted that the latter quoted paragraph of the act provides that the appropriation shall be and remain in full force and effect for a period of two years from its effective date for the purpose of paying liabilities “lawfully incurred hereunder.”
 

 Is relator’s claim a liability “lawfully incurred hereunder”?
 

 To be “lawfully” incurred, a certification from the Director of Finance of the availability of unencumbered appropriated funds, sufficient to meet the proposed obligation, is required by statute. Section 2288-2, General Code, provides:
 

 “It shall be unlawful for any officer, board or commission of the state to enter into any contract, agreement or obligation involving the expenditure of money, or pass any resolution or order for the expenditure of money, unless the Director of Finance shall first certify that there is a balance in the appropriation pursuant to which such obligation is required to be paid, not otherwise obligated to pay precedent obligations.”
 

 Although the contract was awarded and purchase orders were issued to relator, no certificate was ever issued by the Director of Finance, without which an
 
 *61
 
 obligation against the state cannot be and was not ‘ ‘ lawfully ’5 incurred.
 

 Were a writ of mandamus to be granted to compel the Director of Finance now to issue the certificate prayed for, it would be wholly unavailing for the reason that there is no fund available with respect to which he could make a certification. Section 1, paragraph 3, of the appropriation act, expressly provides that sums appropriated shall not be expended to pay liabilities incurred subsequent to December 31, 1938. In other words, by the terms of the act itself, the funds appropriated were available for a period of two years from the effective date of the act for the payment of obligations incurred “hereunder,” that is, no later than December 31, 1938. As to all other obligations the appropriation lapsed.
 

 A writ of mandamus will not be issued to compel the Director of Finance of the state of Ohio to make the certification prescribed by Section 2288-2, General Code, when the appropriated .funds with respect to which certification is sought have lapsed.
 

 It is our opinion that the amended petition does not show on its face that a clear, legal duty reposes upon the Director of Finance to make the certification prayed for.
 

 In view of our holding that a writ of mandamus will not be granted against the Director of Finance on the grounds above stated, it necessarily follows that a writ of mandamus does not lie against the Director of Highways, Robert S. Beightler.
 

 Demurrer sustained.
 

 Weygandt, C. J., Zimmerman, Williams, Matthias and Hart, JJ., concur.
 

 Myers, J., not participating.